imposed a franchise tax upon that basis. In fixing the license fee under section 181 of the tax law (Laws 1896, p. 856, c. 908), he computed it on the par value of $30,000, representing the increased preferred stock, and on the $300,000 of increased common stock, as capital, notwithstanding the fact that he had appraised that stock at 66⅔ per cent., and included as well the $200,000 of stock issued for good will, which he had omitted in imposing his license fee in 1895, presumably because the Court of Appeals meantime had decided that good will was an asset which might be included in the imposition of a franchise tax and license fee. All of the relator's capital, including its good will, whatever might be its value, was confessedly employed within this state.

The relator insists that the Comptroller had no right to revise his own decision of 1895, and compel it to pay a license fee upon the $200,000 of capital which he then omitted, and, further, that he could not impose a license fee upon the increased issue of stock as capital at par, when his own assessment placed it at only 66⅔ per cent. In both of these propositions we think it is right. This court has held in decisions handed down at this term that the Comptroller has no right to review his own decision by arbitrarily reassessing and readjusting a license fee imposed and paid (People ex rel. Spencerian Pen Co. v. Kelsey, as Comptroller [App. Div.] 93 N. Y. Supp. 971), and also that a foreign corporation should be assessed upon the amount of capital employed by it within this state, and not upon the amount of its capitalization (People ex rel. Consolidated Ginseng Company v. Kelsey, as Comptroller [App. Div.] 93 N. Y. Supp. 369). The license fee should have been computed on the $30,000 of preferred stock, which was assessed as capital at par, and the $300,000 of increased stock appraised at 66⅔ per cent., or on $230,000 at the rate of 1¼ mills, which would leave the license fee $287.50, instead of $725, as imposed.

The relator also complains that its common stock was appraised as capital beyond its value. The stock now pays a small dividend, and was issued for $500,000 of good will, and the Comptroller had the right to take into consideration the relator's own estimate of its value. People ex rel. Keochl Company v. Morgan, 96 App. Div. 110, 88 N. Y. Supp. 1066. We do not feel that his determination in this regard should be disturbed.

The determination of the Comptroller should be modified by reducing the license fee to $287.50, and, as so modified, confirmed, with $50 costs and disbursements to relator. All concur.

---

(105 App. Div. 46.)

### In re STAFFORD.

(Supreme Court, Appellate Division, Fourth Department. May 10. 1905.)

1. EXEMPTIONS—PREMISES BOUGHT WITH PENSION MONEY.

Under Code Civ. Proc. § 1393, declaring pensions for military or naval services exempt from execution, land bought by a judgment debtor's husband with pension money, and conveyed to the judgment debtor, is exempt from execution.

**2.** ESTATES—MERGER—UNION OF LESSER ESTATE WITH FEE.

Whether a lease for life becomes merged in the fee when subsequently acquired by the lessee depends upon the intention of the lessee at the time the acquisition is made.

**3.** EXECUTION—SUPPLEMENTARY PROCEEDINGS—APPOINTMENT OF RECEIVER.

Under Code Civ. Proc. § 2464, authorizing the appointment in supplementary proceedings of a receiver of the property of the judgment debtor, whether a receiver should be appointed rests very largely in the discretion of the court, and, while such appointment should be made if the evidence fairly indicates that there is any property applicable to the payment of the judgment, yet there should be no appointment where the judgment debtor has no property applicable to the judgment, and where it may result in harassing him without any benefit to the petitioning creditor.

Appeal from Special Term, Oswego County.

In the matter of the examination of Helen M. Stafford, judgment debtor. From an order denying the petition of the judgment creditor for the appointment of a receiver, petitioner appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

F. T. Cahill, for appellant.

SPRING, J. Up to and prior to 1883, Helen M. Stafford (then Helen M. Carson) was the owner of certain premises situate in the city of Oswego. In January of that year she conveyed the same to her sister Emma Hunt, taking back from said grantee a lease for life. On the 18th day of January, 1897, said grantee reconveyed said premises by warranty deed to said Helen M. Stafford. The petitioner is the judgment creditor of Helen M. Stafford, having recovered a judgment for $52.60 on the 4th day of October, 1904. Proceedings supplementary to execution were had on said judgment, and the judgment debtor was examined pursuant to the order in said proceeding. An application was made in said proceeding for the appointment of a receiver, which application was denied. The judgment debtor testified that her husband, who was a pensioner, paid out of his pension money the purchase price of the premises which were conveyed to his wife. This being so, the fee of the premises is exempt from levy and execution. Code Civ. Proc. § 1393. The petitioner, however, contends that the income from said real estate, by reason of such life lease, can be made amenable to the payment of this judgment. Whether by the union of this lesser estate with the fee of the premises the former was merged in the greater depends upon the intention at the time the conveyance was made. Washburn on Real Property, vol. 1 (6th Ed.) § 740 et seq.; Gerard on Titles to Real Estate (4th Ed.) p. 192 et seq.; Thomas on Mortgages (2d Ed.) § 383. The record shows that Mrs. Stafford has been the owner of these premises since the reconveyance to her in 1897, and there is nothing to indicate that there has been any continuance of the life tenancy as distinguished from the estate in fee. Her intention is paramount in the determination of the effect to be given to the uniting of these

two estates, and there should be something to indicate that she does still retain a life estate before the possession of the property is turned over to a receiver. Whether a receiver is appointed in proceedings supplementary to execution rests very largely in the discretion of the court to whom the application is made. Code Civ. Proc. § 2464. The record in this case shows that at the time of the application for the appointment of a receiver the statements of Mrs. Stafford, the judgment debtor, and her sister Mrs. Williams, the former owner of the premises, were taken by the judge with the assent of the attorney for the judgment creditor. What comprised these statements does not appear. In support of the order of the county judge refusing the application for the appointment of a receiver, it is fair to assume that the statements taken satisfied him that there was a merger of these two estates, and that the purchase price of the fee of the premises was paid from pension moneys of the husband. While a receiver should be appointed if the evidence fairly indicates that there is any property applicable to the payment of the judgment, yet there should be no appointment where the proof shows that the judgment debtor has no property applicable to the lien of the judgment, and where it may result in harassing her without any benefit accruing to the petitioner. The order should be affirmed, without costs.

Order affirmed, without costs. All concur.

---

PEOPLE ex rel. ROBINSON v. BURNS et al.

(Supreme Court, Appellate Division, Second Department. June 9, 1905.)

1. ELECTIONS—CITY COUNCIL AS CANVASSING BOARD—POWER TO DECLARE CANDIDATE INELIGIBLE.

Laws 1896, p. 468, c. 425, tit. 2, § 4 (City Charter of Poughkeepsie), provides that the general election law shall apply to the city election, as well as the canvassing of the votes thereof, and section 5 declares that the common council shall meet after the election, at which meeting a statement of the votes shall be produced by the chamberlain, and shall forthwith determine, declare, and certify who were elected to the various offices. Title 3, § 20, p. 478, gives the common council power to determine the rules of its proceedings, and to judge of the election and qualifications of its members; while section 13 of title 2, p. 469, provides that no person shall be elected an alderman unless at the time of his election he shall be a taxpayer. *Held*, that the common council acting as a canvassing board, under section 5 of title 2, p. 468, has no power to determine that a person receiving a majority of the votes for alderman is ineligible because not a taxpayer.

2. SAME.

In any event, the council elected at the election in question, and not the council in existence at the time of the election, would alone have power to determine the qualifications of the candidate.

3. SAME—MANDAMUS—TO WHOM DIRECTED.

Under Laws 1896, p. 478, c. 425, tit. 3, § 20, making the common council of the city of Poughkeepsie the judge of the election and qualifications of its members, and title 2, § 5, p. 468, providing that the common council shall meet on the Friday next after the election, canvass the votes, and certify what persons were elected to the various offices, a writ of mandamus to compel the common council to grant a certificate of election