Stephen Smyk, J.
This is an action for foreclosure of a mortgage.
The following facts are essentially undisputed.
Snowden Development Corporation (hereafter, Snowden), arranged through Sibley Construction Lending Corporation (hereafter, Sibley) with Metropolitan Life Insurance Company (hereafter, Metropolitan) to finance the building of apartments in the Town of Kirkwood, Broome County, New York. The agreement with Metropolitan called for first mortgage money in a total sum of $1,000,000, with construction of the project to be divided into two phases of $500,000 each. There was a rental achievement clause in the commitment which provided that only $425,000 would be available under each phase of the mortgage until the apartments effectively became income bearing. On May 3, 1968 a $500,000 mortgage was executed and recorded covering phase I of the project. The agreed sum of $425,000 was advanced in stages to Snowden. A gap financing loan of $75,000 to complete phase I was negotiated by Snowden with Sibley. This loan was secured by a second mortgage, executed on October 1,1968 and this mortgage is the subject of the present controversy.
Construction of phase I was continued with advances under this second mortgage being made from time to time by Sibley to Snowden. On December 9,1968, draw number 7 of the series of draws from Sibley to Snowden was advanced, bringing the total money advanced under the construction loan agreement to the full amount of $425,000 then available. On January 8, 1969, the gap financing loan of $75,000 was filed. On August 28, 1969, phase I of the project was accepted by Metropolitan and at that time Metropolitan took assignment of the $500,000 first *1062 mortgage from Sibley who, as the intermediary, had, on behalf of Metropolitan, arranged the mortgage.
On October 1, 1968, Sibley assigned the $75,000 gap financing second mortgage to Central Trust Company of Rochester, New York. Subsequently, Central Trust Company assigned the said mortgage back to Sibley, who on September 10, 1969 reassigned the same to Snowden.
Between September 10 and 17, 1969, the plaintiff negotiated for an assignment of the second mortgage from Snowden to the plaintiff, an extension agreement, an estoppel certificate and personal guarantees of Sidney T. Parr and his wife, president and sole stockholder of Snowden, respectively.
On September 17, 1969, the extension agreement, estoppel certificate and personal guarantees were executed by the Parrs at an attorney’s office in Onondaga County, New York. The assignment was executed later the same day at the plaintiff’s attorney’s office in Endicott, New York.
On July 1, 1970, the $75,000 second mortgage became due. Snowden was unable to pay the mortgage in accordance with the terms of the extension agreement. No action, however, was taken until December, 1970 when it was discovered that certain property taxes were unpaid and the December, 1970 mortgage payment to Metropolitan could not be met. An action for foreclosure was commenced. Plaintiff’s motion for summary judgment under CPLR 3212 was denied in a decision rendered March 23,1971, and a trial was ordered on the issue of merger. The trial was concluded on May 4, 1971.
The sole issue to be decided is whether or not the assignment of the second mortgage by Sibley to Snowden constituted an effective discharge and satisfaction with resulting merger.
A merger is accomplished when two or more estates comprising the whole legal and equitable interest in property involved unite in the same person who then becomes the absolute owner. It requires the existence of a greater and lesser estate, and on merging taking place, the lesser estate is extinguished and absorbed by the greater.
It is the general rule at law that if the ownership of the equity of redemption and of the mortgage on the premises coincide in the .same person, the mortgage debt is extinguished. The doctrine of merger, however, has never been favored in equity and the estates will be presumed to be and held separate when justice requires it and when such was the intention of the parties as will be gathered from the circumstances. (Dunkum v. Maceck Bldg. Corp., 256 N. Y. 275 [1931] ; Wilkinson v. Medbury, 132 Misc. 58, [Sup. Ct., Madison County, 1928] ; Hennessy v. *1063 King, 225 App. Div. 152, [3d Dept., 1929], affd. 252 N. Y. 570 [1929] ; 38 N. Y. Jur., Mortgages, § 255 et seq.) Under normal circumstances, when the owner of the equity of redemption acquires by purchase a subsisting mortgage, merger occurs and the mortgage is extinguished “ unless some beneficial interest to warrant keeping up the distinction clearly appears, or [the purchasing owner] expresses an intention that the mortgage is not to merge ”. (38 N. Y. Jur., Mortgages, § 256, p. 501.) The law is clear that the intention of the parties being sought is that which was operating consciously and at the time the conveyance was made. (Matter of Stafford, 105 App. Div. 46, [4th Dept., 1905].) Where a contract or agreement has been executed by the two persons involved in the negotiations, the plain meaning of the words of the document evidences their intent. It is, then, the manifestation of their intentions which controls, and not any actual, real or secret intentions which may have been in the minds of either party. (Mencher v. Weiss, 306 N. Y. 1 [1953].) Intention may be gleaned by conduct as well. (Restatement, Contracts, § 21 ; Towers v. Doroshaw, 5 Misc 2d 241 [Sup. Ct., Onondaga County, 1957]; 6 Encyclopedia N. Y. Law, Contracts, § 204.)
It has been held that where an owner of mortgaged land inherits the mortgage, he has a reasonable time to decide whether the merger shall occur. He is not required to act before he knows what the situation is. In one case, it was held that a 60-day delay in manifesting intention whether or not the merger should result was not unreasonable. (Thorburn v. Wende, 235 App. Div. 424, [4th Dept., 1932].)
The plaintiffs in a court of equity have the same burden of proving their cause of action by legal and competent evidence as in any action (Hurwitz v. Calvin Realty Corp., 195 App. Div. 416 [4th Dept., 1921]). However, in the instant case, equity presumes against merger effectively occurring. This presumption or inference is rebuttable. The effect of this presumption is to place the burden upon the defendants to come forward with evidence to rebut the presumption, or to negate the existence of a presumed fact, namely that merger did not occur. (St. Andrassy v. Mooney, 262 N. Y. 368 [1933].)
At trial, the plaintiff put in documentary evidence which raised inferences of Snowden’s intent of nonmerger and it thereby became necessary for the defendants to rebut the presumption that there was no intention on the part of Snowden to satisfy and discharge (with resulting merger) the mortgage which is the subject of this foreclosure action.
*1064 At trial, the defendants relied in part on an affidavit of Sidney T. Parr, president of Snowden, which, they argue, sets forth his intentions with respect to the second mortgage. This affidavit states that the mortgage had been fully paid and was in fact satisfied, and, further, that it was never the intention of Snowden Development Corporation that the payment of the mortgage on August 28, 1969 should act as anything but a satisfaction and discharge of that mortgage.
With the exception of the Parr affidavit, all of the documentary evidence produced by the plaintiff tends to support a conclusion that Snowden intended to purchase the mortgage from Sibley without a satisfaction and discharge and then renegotiate it to the plaintiff. Snowden never received a discharge, nor did it ask for one. Alfred J. Boylan, attorney for Sibley, stated the following in an affidavit of April 1, 1971, received into evidence, by stipulation of all the partiesI advised Sidney T. Parr * * * that Sibley Construction Lending Corporation was prepared to deliver a discharge of the said mortgage. Mr. Parr requested, however, that, instead of furnishing a discharge of the mortgage, Sibley Construction Lending Corporation assign the same to Snowden Development Corp. My recollection of the conversation is that Mr. Parr stated that he might have some use for the mortgage, although I do not recall his exact words. In compliance with Mr. Parr’s request, I prepared an assignment of the mortgage to [Snowden] ”.
The mortgmge was assigned to Snowden on September 10, 1969 without a satisfaction and discharge. Snowden renegotiated this mortgage on September 17, 1969 to the plaintiff, covenanting 1 ‘ that there is now owing upon said mortgage, without offset or defense of any kind,” the sum of $75,000. Additionally, the extension agreement, estoppel certificate and personal gurantees previously mentioned were also excuted by the Parrs at their lawyers’ offices in Onondaga County, New York.
Parr’s testimony at trial was inconsistent and he oftentimes suffered from a lack of recall of the earlier events.
The subordination agreement of the third mortgage dated December 16, 1968 states that the $80,000 third mortgage was subordinated to mortgages, including the subject mortgage, given by Snowden to Sibley with an aggregate value of $1,075,-000. There was no evidence presented on the record which would tend to deny that Mr. Parr or the third mortagees, Amsterdam and Schlossberg, believed at the time of the subordination that there was anything owing to Sibley but this amount. There was, however, positive testimony by Parr that Snowden’s obligations under phase I never exceeded $500,000. This total *1065 of $1,075,000 includes the $75,000 allegedly owing on the second mortgage as an amount above and beyond the first mortgage. This subordination agreement, defining the priority of the mortgages, was drawn at Snowden’s direction with an eye towards probable future use of the gap financing mortgage.
The court finds after trial that Snowden Development Corporation did intend to keep the gap financing or second mortgage alive, and further, that Snowden did intend to assign that mortgage to the plaintiff, J. Y. Becker, as a valid second mortgage. Under the terms of the subordination agreement the court finds that the Schlossberg and Amsterdam third mortgage was and remains junior and subordinate to the Becker mortgage.
Judgment for the plaintiff is rendered in this action for foreclosure.