John F. GILMORE, Individually, and Jerome Hotel Company, a Michigan limited partnership consisting of General Partner John F. Gilmore, Plaintiffs,

v.

UTE CITY MORTGAGE COMPANY, a Colorado corporation, and Imperial Savings and Loan Association, a California corporation, Defendants.

Civ. A. No. 85–K–882.

United States District Court, D. Colorado.

Oct. 30, 1986.

Order on Motion for Reconsideration Dec. 5, 1986.

---

Sandra L. Spencer, White & Steele, P.C., Denver, Colo., John E. Anding, Clary, Nantz, Wood, Hoffius, Rankin & Cooper, Grand Rapids, Mich., for plaintiffs.

Thomas C. Hill, Seigle, Drabacher, Hill & Schiffer, P.C., Aspen, Colo., for Ute City Mortg. Co.

Michael J. Wadle, James W. Marks, Gorsuch, Krigis, Campbell, Walker and Grover, Denver, Colo., for defendant Imperial S & L Assn.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

### I. FINDINGS OF FACT

Plaintiffs, collectively "Gilmore," sought capital for renovation of the Jerome Hotel in Aspen, Colorado. On December 6, 1983, Gilmore signed a construction financing loan commitment with the lender defendants. A permanent financing commitment was executed, on the same day, among the identical three parties. The two agreements were amended in writing on January 6, 1984. Following execution of the commitment letters, Gilmore paid defendants a $165,000 commitment fee. At a meeting held on May 25, 1984 to discuss closing on the loan, Gilmore was informed defendants would not lend him the money.

Gilmore subsequently brought this diversity-based action [1] to recover damages occasioned by defendants' alleged failure to fulfill the terms of the commitment letters. Gilmore's amended complaint states five separate counts: breach of contract, promissory estoppel, breach of implied warranty of good faith and fair dealing, negligence, and negligent misrepresentation. The two defendants are named jointly in each count. Imperial has moved for summary judgment on each of the five claims. Ute City has adopted the motion. Gilmore has requested oral argument, but I find argument unnecessary and so deny the request.

---

1. Colorado law therefore applies.

## II. CONCLUSIONS OF LAW

### A. *Standards for Decision*

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In determining the existence of any genuine issue of material fact, the record is construed in the light most favorable to the party against whom the motion has been made. *Otteson v. United States,* 622 F.2d 516, 519 (10th Cir. 1980). However, the adverse party "may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

### B. *Count I: Breach of Contract*

Paragraph 4 of the construction financing commitment[2] states, in relevant part: "Lender commitment herein is conditioned upon lender's loan committee approval." Further, paragraph 10 provides for return to Gilmore of all but $5,000 of the loan commitment fee "if all conditions herein are met and Imperial's loan committee declines to make said loan." Gilmore has admitted return receipt of his $160,000. Gilmore Deposition at 65.

Defendants contend summary judgment is warranted because Gilmore "agreed, pursuant to paragraphs 4 and 10 of the commitment for construction financing that Imperial could decide not to make the loan even if plaintiffs met all the conditions stated in the commitment letter." Imperial's Motion for Summary Judgment, at 8.

The language of paragraphs 4 and 10 is unambiguous and must be enforced as written. *Lowell Staats Mining Co., Inc. v. Pioneer Uravan, Inc.,* 596 F.Supp. 1428,

1430 (D.Colo.1984). Moreover, "the determination of the meaning and effect" of the provisions of an unambiguous document "is a question of law for the court, proper for resolution by summary judgment." *Id.* at 1430.

■ Gilmore seeks to avoid the clear impact of paragraphs 4 and 10 by pointing to page 294 of the deposition testimony transcript of Richard Geiler, Imperial's executive vice-president in charge of the loan. The relevant deposition exchange consisted of the following question and answer:

Q. In this particular instance the loan committee as a body never acted to approve or disapprove this loan; correct?

A. As a body the loan committee never met to approve or disapprove this loan, that is correct. And that is not unusual with a loan application coming into a bank or a savings and loan.

Geiler's response raises a fact question concerning compliance with paragraph 10. Specifically, the loan committee may never have had the opportunity to review the loan. Defendants' motion for summary judgment is therefore denied on the breach of contract claim.

### C. *Count II: Promissory Estoppel*

Colorado has adopted the doctrine of promissory estoppel as stated in section 90 of the Restatement (Second) of Contracts. *Vigoda v. Denver Urban Renewal Authority,* 646 P.2d 900, 905 (Colo.1982). This doctrine

should be applied to prevent injustice *where there has not been mutual agreement by the parties on all essential terms of a contract,* but a promise was made which the promisor should reasonably have expected would induce action or forbearance, and the promise in fact induced such action or forbearance.

*Id.* at 905 (emphasis added).

Promissory estoppel is therefore applicable only in the absence of an otherwise

---

**2.** Resolution of the summary judgment motion with respect to the construction financing commitment is also dispositive of the summary judgment motion for breach of the permanent financing commitment. Gilmore admits "the dispute arises over the terms of the commitment for construction financing." Brief in Opposition to Imperial's Motion for Summary Judgment, at 5 n. 3. Moreover, the permanent financing commitment is contingent upon the closing of the construction loan. Permanent Financing Commitment letter, ¶ 8.

enforceable contract. *See* Calamari & Perillo, *The Law of Contracts*, § 6–7 (2d ed. West 1977) ("[b]efore looking to the doctrine of promissory estoppel the courts ordinarily look to see if conventional consideration is present").

In the case at bar, the parties have participated in a fully "bargained for" exchange of conventional consideration. The first sentence of the final paragraph of the construction financing commitment letter explicitly makes the letter "the full and complete agreement between the borrower and lender." Gilmore does not allege fraud, duress, or other illegality which would render the contract void or voidable. Therefore the commitment letter is a valid, mutually enforceable agreement. The rights and duties of the parties must be determined by reference to specific contractual terms. The alternative remedy of promissory estoppel is never reached where, as here, "there has been mutual agreement by the parties on all essential terms of a contract." *Vigoda*, at 905. Defendants' motion for summary judgment is therefore granted on the promissory estoppel claim.

### D. *Count III: Breach of Implied Warranty of Good Faith and Fair Dealing*

Gilmore claims defendants' refusal to perform in accordance with the terms of the loan commitments constitutes a breach of the implied covenant of fair dealing and good faith. Gilmore's argument posits that paragraph 10 cannot be exercised by defendants in a manner inconsistent with Gilmore's expectations. Brief in Opposition to Imperial's Motion for Summary Judgment, at 18. Gilmore analogizes paragraphs 4 and 10 to a satisfaction clause. He finds a violation by defendants because "the reasons for termination of the commitment agreement were other than Imperial's dissatisfaction." *Id.* at 19.

I have recently examined this same issue in the context of a breach of contract action governed by the Uniform Commercial Code. *Power Motive Corporation v. Mannesmann Demag Corporation*, Action No. 85–K–13 (D.Colo. October 21, 1986) [Available on WESTLAW, DCT–CS database]. I cannot rewrite an unambiguous termination clause so as to impose an extrinsic condition on its exercise. *Id.* at 4. "[T]he implied obligation cannot override express contractual terms, at least not in the circumstances present in this case," *id.*, because like Power Motive, Gilmore executed the commitment letters with his eyes open.

As noted above, Gilmore has made no allegations of fraud, duress or other illegality "which would nullify the termination provision." *Id.* at 5. Gilmore was aware of defendants' contractual right to decline to fund the loan and to return all but $5,000 of the commitment fee. Having accepted these risks when he signed the agreement, Gilmore cannot use the good faith argument to extricate himself from an agreement which hindsight has shown to be financially undesirable. *Id.* at 5. Defendants' motion for summary judgment is therefore granted for Count III.

### E. *Count IV: Negligence*

In this count, Gilmore alleges defendants' negligent processing of the loan commitments. Gilmore contends his loan application was not handled in a commercially reasonable and diligent manner.

This count is a mere restatement, in tort form, of the first count's claim for breach of contract. I have already found a genuine issue of material fact to exist regarding review of the loan by the loan committee. Colorado law does not recognize an independent tort action for breach of such contractual duties. *Strey v. Hunt International Resources Corporation*, 749 F.2d 1437, 1441 (10th Cir.1984), *cert. denied*, —— U.S. ——, 107 S.Ct. 237, 93 L.Ed.2d 162 (1986); *Bloomfield Financial Corporation v. National Home Life Assurance Company*, 734 F.2d 1408, 1414–1415 (10th Cir.1984). The motion for summary judgment is granted for Count IV.

### F. *Count V: Negligent Misrepresentation*

In this count, Gilmore bases its claim for negligent misrepresentation on Geiler's as-

surances "that there would be no difficulty in obtaining approval of the loan from Imperial's loan committee." Amended Complaint, ¶ 51. *See also* Gilmore affidavit of July 7, 1986, ¶ 16, and Gilmore affidavit of October 20, 1986, which describe alleged misrepresentations by Michael Logsdon, a Ute City employee.

Colorado has adopted § 552 of the Restatement (Second) of Torts on negligent misrepresentation. *First National Bank in Lamar v. Collins*, 44 Colo.App. 228, 616 P.2d 154, 155 (1980). Section 552(1) states:

One who, in the course of his business, profession, or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

A vital element of the tort of fraudulent misrepresentation is the falsity of the representation. *Institute for Professional Development v. Regis College*, 536 F.Supp. 632, 633 (D.Colo.1982). Application of this same principle to a claim for negligent misrepresentation is self-evident. There can be no misrepresentation if the representation is true, regardless of whether the representation is fraudulently or negligently made.

Defendants contend the Geiler representations were not false at the time they were made. Therefore defendants would have me find Gilmore to be legally incapable of proving all the elements of his claim. As Gilmore notes, however, the falsity issue is still an unresolved fact question here. The motion for summary judgment is therefore denied on Count V.

IT IS ORDERED:

1. Imperial's motion for summary judgment, as amended, and as adopted by Ute City, is denied in part and granted in part. Counts II, III, and IV are dismissed from the complaint. Counts I and V remain against both defendants.

2. Ute City's cross-claim against Imperial is dismissed to the extent it seeks indemnification for Counts II, III, and IV of Gilmore's amended complaint.

3. Imperial's cross-claim against Ute City is dismissed to the same extent as Ute City's cross-claim against Imperial.

### ORDER ON MOTION FOR RECONSIDERATION

Gilmore brought suit for breach of a loan commitment. The amended complaint stated five claims for relief: breach of contract, promissory estoppel, breach of implied warranty of good faith and fair dealing, negligence, and negligent misrepresentation. By order of October 30, 1986, the second, third, and fourth claims were dismissed. Gilmore subsequently moved for reconsideration of the court's dismissal of the third claim, namely breach of implied warranty of good faith and fair dealing.

The court has considered the briefs filed by both parties in conjunction with the motion for reconsideration. No cognizance can be given to a separate claim for breach of the duty of good faith. As defendants have noted, Colorado has not recognized an independent claim for bad faith breach of contract outside the insurance context. Therefore Gilmore's third claim fails to state a claim upon which relief may be granted. *See Chicago College of Osteopathic Medicine v. George A. Fuller Company*, 719 F.2d 1335, 1348 (7th Cir.1983) (Illinois law does not support a cause of action for bad-faith dealing outside the areas of insurance and employment law); *Brown-Marx Associates, Ltd. v. Emigrant Savings Bank*, 703 F.2d 1361, 1371 (11th Cir.1983) (borrower failed to allege actionable tort against lender for breach of duty of good faith). Dismissal of the third claim was proper, and the motion for reconsideration will be denied.

Dismissal of the third claim finds additional support in the very authority Gilmore submits in favor of the reconsideration motion. Justice Scalia, in his former capacity as a judge for the Court of Appeals for the District of Columbia, found the doctrine of good faith to be "simply a rechristening of fundamental principles of contract law." *Tymshare, Inc. v. Covell*, 727 F.2d 1145, 1152 (D.C.Cir.1984). "[I]t

becomes clear," continued the Justice, "that the doctrine of good faith performance is a means of finding within a contract an implied obligation not to engage in the particular form of conduct which, in the case at hand, constitutes 'bad faith.'" *Id.* The good faith doctrine is a modern reformulation of the hallowed principle that courts should honor "the reasonable expectations created by the autonomous expressions of the contracting parties." *Id.*

In "the case at hand," the "autonomous expressions of the contracting parties" conditioned lender commitment on lender's loan committee approval. The reasonable expectations created by this language were that the loan would not be denied in the absence of loan committee action. The particular form of conduct which constitutes bad faith in the case at bar is the lender's alleged failure to institute and complete committee consideration of the loan application. In short, the duty of good faith and fair dealing in this case is implicit in the duty of committee consideration. When the bad faith claim is applied to the specific facts of this case, it simply translates into defendants' purported failure to perform an express duty required by the terms of the contract.

The implied duty of good faith and fair dealing in this context is thus nothing more than a restatement of Gilmore's claim for breach of contract. The third claim is subsumed by the first claim. Therefore, aside from the third claims' inability to stand alone as a separate cause of action, the claim adds nothing to the base claim for breach of contract. This redundancy provides an additional ground for dismissal.

However, the rationale used in the court's order of October 30, 1986 has engendered confusion. In part II D of the order, I presumed loan committee review was required before defendants could exercise their contractual right not to fund the loan. This presumption sprang from my conclusion in part II B of the order that plaintiffs had asserted a viable claim for breach of contract sufficient to survive a summary judgment motion.

I do not take issue with Gilmore's declaration that the prerequisite of "an evalu-

ative review of the loan request prior to termination presumes that the review will be conducted in good faith." Gilmore Brief, at 4. In fact, I agree with this statement and assumed it in part II B of my October 30 order. The review requirement would not have any meaning unless such review were adequately conducted.

Given this assumption, I viewed Gilmore's third claim as an attempt, through invocation of the doctrine of good faith, to frustrate defendants' right not to fund even once sufficient committee review had been completed. This interpretation was fueled by plaintiffs' touting of the third claim as one distinct and independent of the first claim.

I then cited the *Power Motive* case for the proposition that the implied duty of good faith cannot take on such a life of its own outside the confines of the contract and superimpose an additional condition on the operation of defendants' contractual rights. I did not cite *Power Motive* for the purpose of allowing defendants to terminate the loan commitment without first conducting acceptable committee review. Such a conclusion would have eviscerated my decision under part II B of the order. I clarify my October 30 order to that extent.

Accordingly, the motion for reconsideration is DENIED.