**CENTENNIAL SQUARE, LTD., a Colorado limited partnership, Bortles Investment corporation, a Hawaii corporation, and Larry L. Bortles, Plaintiffs–Appellants,**

v.

**RESOLUTION TRUST COMPANY, as Receiver for Capitol Federal Savings and Loan Association of Denver, a federally charted Savings and Loan Association, Defendant–Appellee.**

No. 90CA0585.

Colorado Court of Appeals, Div. IV.

July 5, 1991.

Bailey & Makaroff, Robert B. Bailey, Lakewood, for plaintiffs-appellants.

Otten, Johnson, Robinson, Neff & Ragonetti, P.C., David W. Stark, Kristen L. Mix, Denver, for defendant-appellee.

Opinion by Judge VAN CISE *

In this lender liability action, plaintiffs, Centennial Square, Ltd. (Centennial), Bortles Investment Corporation (Centennial's general partner), and Larry L. Bortles (collectively, borrowers) appeal the summary judgment entered before trial in favor of defendant, Capitol Federal Savings and Loan Association of Denver (lender), in which the court dismissed borrowers' claims for damages based on lender's alleged negligence and bad faith in the processing of their loan application. Borrowers also appeal the court's entry of a directed verdict made at the close of their case in favor of lender, dismissing borrowers' claim for a return of receivership profits. We affirm in part, reverse in part, and remand with directions.

In 1986, borrowers obtained a $3,960,000 loan from lender to purchase a shopping center. In 1987, they obtained a second loan from lender in the amount of $200,000 for repairs on the property. Each loan was evidenced by a promissory note secured by deeds of trust on the shopping center property.

In February 1988, plaintiff Bortles met with a senior vice president of lender and requested a third loan. At trial, Bortles testified that he informed lender that: 1) this loan was needed to pay for finish work required to obtain a prospective tenant; 2) Centennial had insufficient capital to pay for the work; 3) it was important to obtain this tenant because it would lease space in a location which had been difficult to lease; and 4) the lease could not be executed without the loan. Additionally, although he had requested $350,000, he also stated that $80,000 was the minimum amount needed to complete the finish work for the prospective tenant. After this meeting, but prior to obtaining this loan, Centennial executed a lease with the prospective tenant which required Centennial to complete the finish work on or before April 15, 1988.

On April 22, 1988, lender orally advised Bortles that it had approved a third loan of $135,000. However, it was conditioned on Bortles' wife signing a personal guaranty in the amount of $4,295,000, which represented the total that would be owed on all three loans. Lender subsequently dropped this condition, but Bortles testified that it was not until May 10, 1988, some 25 days after the deadline for occupancy by the tenant, that the loan was approved. Lender disputed that the requirement for a personal guaranty had delayed the loan, asserting, instead, that the delay was the result of the borrowers' refusal to accept this loan offer and their demanding a loan of $350,000.

After Centennial failed to complete the finish work on time, it lost its lease with the tenant. Also, Centennial owed back payments under the first and second promissory notes, which it was unable to pay. As a result, lender commenced foreclosure proceedings on the second ($200,000) note and a receiver was appointed by order of court May 23, 1988. The receiver took possession of the property, collected the rents, and paid the expenses.

At a public trustee sale, lender bid the full amount due on the second note and, on October 18, 1988, obtained title to the property by public trustee's deed. The receiver then paid over to lender $50,229.74, this being the net profits realized from management of the property during the receivership.

The borrowers brought this action against lender, asserting that it had breached an oral contract to loan money to

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S. (1988 Repl.Vol. 10B).

the borrowers and seeking recovery of damages on claims of breach of contract, promissory estoppel, breach of the covenant of good faith and fair dealing, and negligent misrepresentations. They also sought to recover the $50,229.74 in net profits from the operation of the property during the receivership that had been paid over to lender. Lender counterclaimed, alleging that a deficiency was owed on the first promissory note and that Bortles had made certain fraudulent conveyances to his wife.

Prior to trial, the court entered a summary judgment dismissing borrowers' tort claims for negligence and bad faith. At the close of borrowers' case-in-chief, the court directed a verdict dismissing borrowers' claim for return of the receivership funds. At the close of lender's case, the court dismissed lender's counterclaims. The breach of contract and promissory estoppel claims were submitted to the jury, and it returned a verdict in favor of lender and against borrowers.

The court's rulings on borrowers' tort claims and the claim for the receivership funds are the subject of this appeal. The judgment on the contract and estoppel claims is not appealed. There is no cross-appeal.

While this appeal was pending, lender was declared insolvent by the Office of Thrift Supervision, and the Resolution Trust Corporation (TRC), as receiver for lender, was substituted as defendant-appellee on this appeal.

## I.

■ We disagree with borrowers' contention that the trial court erred in entering summary judgment of dismissal on borrowers' claims for negligence and breach of a covenant of good faith and fair dealing in processing the third loan.

The trial court concluded that dismissal of these tort claims was proper because "the duties purportedly tortiously breached were created by a contractual relationship and the facts supporting the tort claims are the same as those supporting the contract claims." In so doing, it relied primarily on

*Bloomfield Financial Corp. v. National Home Life Assurance Co.*, 734 F.2d 1408 (10th Cir.1984) and *Gilmore v. Ute City Mortgage Co.*, 660 F.Supp. 437 (D.Colo. 1986).

In *Bloomfield*, the court affirmed the dismissal of a tort claim for breach of implied contractual duties on the grounds that, under Colorado law, no independent tort action may lie for such a breach. In *Gilmore*, an action for breach of a loan contract, the court entered summary judgment dismissing borrowers' claim for negligent loan processing on the ground that: "Colorado law does not recognize an independent tort action for breach of such contractual duties."

Also, here the trial court distinguished between the tort claims and borrowers' contract claims on the basis that:

"The existence of a contract may merely be the circumstance which puts the [parties] in contact with each other. If one of the parties causes foreseeable injury or harm by activity or inactivity which is not part of their contractual obligation such as misusing insider information [*Dolton v. Capitol Federal Savings & Loan Ass'n*, 642 P.2d 21 (Colo.App. 1981)] or failing to discover leaks [*Metropolitan Gas Repair Service, Inc. v. Kulik*, 621 P.2d 313 (Colo.1980)], the claim is one for tort, not breach of contract....

This is not the circumstance in this case. There is no activity beyond the timely performance of the contract (or promise) and no losses asserted beyond those commercially foreseeable. Consequently, contract principles should govern and plaintiffs' claims for 'bad faith dealing' and 'negligent loan processing' should be dismissed."

The relevant facts were not in dispute, and the trial court's conclusion was correct.

## II.

■ Borrowers next contend that the trial court erred in entering a directed verdict in favor of lender on their claim for the return of the $50,299.74 collected by the

receiver and paid over to lender. They assert that their debts were extinguished by the foreclosure and that, thus, the lender was not entitled to those funds. We agree.

This claim was asserted on the theory of money had and received, which arises "where one has received money which in equity and good conscience he ought to pay over to another." *National Surety Corp. v. Citizens State Bank,* 41 Colo.App. 580, 593 P.2d 362 (Colo.App.1979), *aff'd on other grounds,* 199 Colo. 497, 612 P.2d 70 (1980).

As the basis for their claim of entitlement to these sums, the borrowers first assert that any debt owed under the second note was extinguished when lender bid the full amount owed on that note at the foreclosure sale. They rely on *Imperial Mortgage Corp. v. Travelers Indemnity Co.,* 43 Colo.App. 74, 599 P.2d 276 (1979), wherein the court held:

> "A mortgagee extinguishes its rights to further proceeds from the mortgagor following the satisfaction of the mortgage held on the property, and here the entire debt was satisfied when the full amount was bid and accepted on the note."

They also contend that, under the doctrine of equitable merger, lender's first mortgage interest merged with its legal ownership interest when it received the public trustee's deed to the property, thus extinguishing any debt owed under the first note. In support of this contention, they cite *In re Fluharty,* 23 B.R. 426 (Bkrtcy.N.D.Ohio 1982), and *Becker v. Snowden Development Corp.,* 66 Misc.2d 1060, 323 N.Y.S.2d 79 (1971).

Lender argues that a merger should not be found because the parties manifested a contrary intent, evidenced by the deed of trust securing the first promissory note which provided that lender was entitled to receive any profits of the property after default "without regard to the value of the property...." Thus, citing *Hefley Ranch, Inc. v. Stewart,* 764 P.2d 415 (Colo.App. 1988), lender contends that the trial court's holding correctly recognized and effectuated the intent of the parties.

However, lender ignores the words contained in the same sentence in the deed of trust, specifying that "all rents, issues and profits, income and revenue of said property shall be applied by such receiver according to law and the order and directions of the court." In its order appointing the receiver, the court directed that, after payment of the costs and expenses of the receivership and the expenses incident to the property, the money received should be applied "to the payment of the principal, interest, and other charges of that certain $3,960,000 promissory note ... and that certain $200,000 promissory note...."

■ A merger ordinarily occurs only when it is intended by the parties. However, a merger can also be presumed when equity demands. The general rule with respect to equitable merger is that when the value of the property is equal to or exceeds the debt represented by the mortgage, "justice would demand and equity presume, a merger." *International Trust Co. v. Rodewald,* 96 Colo. 358, 43 P.2d 1003 (1935). *See Goldblatt v. Cannon,* 95 Colo. 419, 37 P.2d 524 (1934).

Here, the evidence was undisputed that the value of the shopping center property at the time of the delivery of the public trustee's deed following foreclosure was equal to or exceeded the amount owed on both notes. Therefore, the doctrine of merger applies, and any debt previously owed under either note is extinguished.

■ Since the debts were extinguished, there was no debt to which the receivership profits could be applied. Therefore, the receiver had no authority to pay these funds to lender. *See Phillips v. Webster,* 162 Colo. 315, 426 P.2d 774 (1967); *White v. Short,* 794 P.2d 1110 (Colo.App.1990).

The trial court correctly applied this merger rationale when it dismissed lender's counterclaim for a deficiency on the first note. However, the court erred in directing a verdict for lender on borrowers' claim for the return of the net profits earned during the receivership.

The summary judgment in favor of lender on the borrowers' claims for negligence

and bad faith is affirmed. The directed verdict in favor of lender on the borrowers' claim for return of receivership profits is reversed, and the cause is remanded for entry of judgment in favor of the borrower on his claim for return of the net profits loaned during the receivership.

REED and ROTHENBERG, JJ., concur.