Thomas H. **DECKER**, Plaintiff–Appellee,

v.

**BROWNING–FERRIS INDUSTRIES OF COLORADO, INC.**, Defendant–Appellant.

**No. 93CA1427.**

Colorado Court of Appeals,
Div. IV.

Jan. 12, 1995.

Rehearing Denied March 16, 1995.

Certiorari Granted Oct. 2, 1995.

Cross–Petition for Writ of Certiorari Denied Oct. 2, 1995.

Stefan Kazmierski, Littleton, for plaintiff-appellee.

John N. McNamara, Jr., P.C., John N. McNamara, Baker & Hostetler, James A. Clark, Kathryn A. Elzi, Denver, for defendant-appellant.

Feiger, Collison & Killmer, P.C., Gilbert M. Roman, Denver, for amicus curiae Nat. Employment Lawyers Ass'n.

Opinion by Judge CASEBOLT.

In this wrongful termination of employment suit, defendant, Browning–Ferris Industries of Colorado, Inc. (BFI), appeals the judgment entered upon a jury verdict awarding damages to plaintiff, Thomas H. Decker. We affirm in part and reverse in part.

Decker was employed by BFI, beginning in 1985, first as a crew member and then as a trash truck driver in its Aspen, Colorado, location. In early 1991, a new general manager for that location was installed. In August of 1991, the new general manager for BFI fired Decker, allegedly for working too slowly.

Decker brought this wrongful termination suit against BFI asserting that he had been discharged in violation of an alleged progressive discipline policy and that BFI had breached an express covenant of good faith and fair dealing in terminating his employ-

ment. Decker sought damages under a contract claim, tort damages for breach of the express covenant of good faith, and punitive damages under the alleged tort claim.

At trial, BFI stipulated that it promised fair treatment to its employees, but denied any impropriety in its treatment of Decker.

After trial, the jury awarded Decker $600,-000 for lost income, $80,000 in noneconomic damages for breach of the good faith covenant, and $680,000 in punitive damages predicated upon breach of the covenant.

## I.

BFI's first contention is that the trial court erred by refusing to admit evidence, acquired after Decker was terminated, which allegedly established that Decker lied about his criminal record on his employment application. We disagree.

In 1984, Decker was charged in Texas with a misdemeanor count of possession of cocaine. Under a deferred prosecution, Decker entered a plea of guilty to the charge; however, he successfully completed the deferred prosecution period, the guilty plea was withdrawn, the misdemeanor charge was dismissed, and his record was expunged, all prior to submitting his employment application to BFI.

BFI's employment application asked whether Decker had "ever been convicted of a felony or a misdemeanor involving moral turpitude (e.g. theft?)" to which Decker answered "No." After BFI terminated Decker's employment, Decker revealed the charge in interrogatory answers and in his deposition, at that time mistakenly characterizing the charge as a felony. BFI denied having any previous knowledge of the charge.

BFI then asserted a defense of fraud in the inducement and filed a motion for summary judgment on Decker's claims based on that defense and upon the doctrine of after-acquired evidence. Decker, in turn, filed a motion in limine seeking to exclude any evidence of this prior charge.

BFI argued that the evidence should be admitted because BFI would not have hired Decker, or would have immediately terminated his employment, had it learned about the drug charge. Accordingly, BFI contended, Decker was not entitled to recover any damages for termination of his employment. BFI also sought admission of the evidence on the grounds that it was relevant to whether Decker had dealt fairly with BFI under the covenant of good faith and fair dealing.

The trial court denied the motion for summary judgment and granted Decker's motion in limine, excluding all after-acquired evidence of the drug charge. It concluded that, in light of the disposition of the charge, Decker had been truthful on his application. In addition, the trial court concluded that, to the extent the evidence was relevant, its probative value was substantially outweighed by the danger of unfair prejudice under CRE 403; hence, the trial court also excluded the evidence for that reason.

A trial court is afforded considerable discretion in passing upon the admission or exclusion of evidence, especially when weighing its probative value and prejudicial effect. Its ruling will not be disturbed on appeal absent an abuse of that discretion. *Hock v. New York Life Insurance Co.*, 876 P.2d 1242 (Colo.1994). A trial court abuses its discretion only when its evidentiary ruling is manifestly arbitrary, unreasonable, or unfair. *People v. Milton*, 732 P.2d 1199 (Colo. 1987).

## A.

BFI contends that the proffered evidence was relevant to prove its defense of fraud in the inducement. Under the circumstances at issue, we disagree.

In *Weber v. Colorado State Board of Nursing*, 830 P.2d 1128 (Colo.App.1992), a division of this court concluded that, following successful completion of a deferred judgment, there no longer exists a plea of guilty to a felony and there never existed a judgment of conviction. That reasoning provides persuasive support for the trial court's finding here that Decker did not lie on his application. Such factual findings will not be disturbed on review if, as here, they are supported in the record. *Pomeranz v. McDonald's Corp.*, 843 P.2d 1378 (Colo.1993).

The trial court's determination that Decker was truthful in his application negates the relevance of the evidence for purposes of a fraud in the inducement defense. In order for such a defense to succeed, the evidence must show that Decker made a false statement of fact or concealed a past or present fact which he had a duty to disclose. *See Murray v. Montgomery Ward Life Insurance Co.*, 196 Colo. 225, 584 P.2d 78 (1978).

In light of the *Weber* holding and the trial court's finding, Decker neither made a false statement, nor was he obligated to disclose the previous charge since it did not constitute a "conviction." Hence, we find no abuse of discretion in the court's ruling relevant to the fraud in the inducement defense.

### B.

BFI next contends that the evidence was relevant under the doctrine of "after-acquired evidence." Again, under these circumstances, we disagree.

The "after-acquired evidence" doctrine stems from the decision in *Summers v. State Farm Mutual Automobile Insurance Co.*, 864 F.2d 700 (10th Cir.1988). There, an employee was fired for generally unsatisfactory work performance. Several years later during the course of discovery in the employee's wrongful termination of employment suit, State Farm discovered that the employee had falsified records. In affirming summary judgment for State Farm, the court held that even though the falsifications discovered after termination of employment were not the original basis for the firing, they were nevertheless admissible in determining what relief, if any, should be afforded the employee. *See also McKennon v. Nashville Banner Publishing Co.*, 9 F.3d 539 (6th Cir.1993), *cert. granted*, —— U.S. ——, 114 S.Ct. 2099, 128 L.Ed.2d 661 (1994).

The court in *Summers* further held that an employee cannot recover under any theory when the after-acquired evidence would have resulted in termination of the employment relationship if it had been known at the time of the firing.

This doctrine has not been addressed by Colorado appellate courts and we need not decide here whether it should be made part of Colorado law because, under the circumstances of this case, it would not be available. Here, BFI offered an affidavit from its former manager that indicated he would not have hired Decker, or alternatively, would have fired Decker if he had known that Decker had "pled guilty to a felony."

But, as noted above, since the charge against Decker was a misdemeanor, the former manager's affidavit does not establish that the evidence would be admissible on the issue of pleading guilty to a *felony*. Consequently, we perceive no abuse of discretion by the trial court in refusing to admit the evidence by application of the "after-acquired evidence" doctrine.

### C.

BFI finally asserts that the evidence was relevant on Decker's tort claim of breach of covenant of good faith and fair dealing. We are not persuaded.

In a discussion below, we hold that the trial court erroneously submitted Decker's tort claim to the jury. Accordingly, evidence of Decker's alleged breach of such a covenant, even if established, would be without significance.

Hence, we affirm the trial court's exclusion of this evidence. *People v. Aldrich*, 849 P.2d 821 (Colo.App.1992).

### II.

BFI next contends that the trial court erred in allowing Decker to present testimony regarding the existence and contents of the alleged progressive discipline policy. Again, we perceive no error.

The policy, which BFI claimed did not exist, was purportedly contained in a writing issued to employees. No original or copy of any such policy was introduced at trial, nor was it produced by either side during discovery.

Relying upon *Walker v. Drogmund*, 101 Colo. 521, 74 P.2d 1235 (1937) and *People v. Heckers*, 37 Colo.App. 166, 543 P.2d 1311

(1975), BFI claims that secondary evidence of the contents of a writing must be clear and convincing, a standard not met here. We disagree.

The vitality of *Walker* and *Heckers* for the proposition that "clear and convincing" evidence of the contents of a writing is necessary has been significantly undercut by the adoption of § 13–25–127, C.R.S. (1987 Repl. Vol 6A). That statute establishes a "preponderance of the evidence" burden of proof in civil actions. *See Gerner v. Sullivan,* 768 P.2d 701 (Colo.1989) (preponderance of the evidence standard applies to any civil action except those specified in the statute).

■ In addition, § 13–25–113, C.R.S. (1987 Repl.Vol. 6A) further supports the admission of the evidence here. That statute provides that, before a party may rely on a document alleged to have been written by the adverse party and subsequently lost or destroyed, that party "shall not be permitted to give evidence of the contents thereof by a competent witness until said party or his agent or attorney first makes an oath to the loss or destruction thereof, and to the substance of the same." Once compliance with the statute has occurred, the evidence is admissible. *See In re Marriage of Fifield,* 776 P.2d 1167 (Colo.App.1989).

Here, BFI does not dispute that Decker presented testimony under oath to the loss or destruction of the alleged document. And, while it argues that the "substance" of the document remains unproven, in our view, that issue is ultimately for determination by the trier of fact.

Under CRE 1004(1), secondary evidence establishing the contents of a writing may be admitted if the original is lost or destroyed, so long as the proponent did not lose or destroy it in bad faith. *See Rodriguez v. Schutt,* 896 P.2d 881 (Colo.App.1994). Here, there was no evidence of any bad faith on the part of Decker in failing to produce the original; rather, BFI simply argued that the policy had never existed.

■ Once production of the original is excused, a determination to be made by the trial court, secondary evidence of the contents is admissible. As noted in J. Wein-

stein, *Weinstein on Evidence,* ¶ 1004(01) (1983):

> Rule 1004 recognizes no degrees of secondary evidence. In other words, once the conditions of Rule 1004 are met, the parties seeking to prove the contents of a writing, photograph, or recording may do so by any kind of secondary evidence ranging from photographs and handwritten copies to oral testimony of a witness whose credibility is suspect. Of course, the opponent may attack the sufficiency of the secondary evidence including the credibility of the witness. This attack, however, goes not to admissibility but to the weight of the evidence and is a matter for the trier of fact to resolve.

Thus, the evidence was admissible under CRE 1004, and the trial court did not abuse its discretion in admitting it.

■ Second, we disagree with BFI's assertion that reasonable minds could not have found the existence of the progressive discipline policy. There was testimony at trial from several witnesses, including Decker, that the policy existed. In addition, one witness for BFI indicated in a deposition that he believed there was such a policy; although he explained at trial that he had misunderstood which policy was being discussed, the jury could have credited his earlier testimony over his later explanation. Accordingly, the trial court did not err in allowing the jury to determine whether the policy existed. *See Robinson v. Pourde Valley Federal Credit Union,* 680 P.2d 241 (Colo.App.1984).

### III.

Arguing that Colorado does not recognize such a claim in an employment context, BFI next contends that the trial court erred in allowing Decker to present a tort claim for breach of a covenant of good faith and fair dealing. We agree.

We note initially that there was a stipulation by BFI that, although not expressly stated in a writing or otherwise, it promised to treat employees fairly; hence, we deal here only with an express or implied-in-fact covenant of good faith and fair dealing. *See*

*Tuttle v. ANR Freight System, Inc.*, 797 P.2d 825 (Colo.App.1990) (noting that there is no legal difference between an express and implied-in-fact contract). Consequently, we do not address whether, or under what circumstances, an implied-in-law covenant of good faith and fair dealing should or does exist in employment contracts generally.

Further, the parties agree that this claim was not submitted under a contract theory, but rather as a tort claim. Thus, again, we do not address whether, or under what circumstances, the breach of such an express or implied-in-fact covenant gives rise to a contract claim in the employment context, nor in this contract specifically.

■ The breach of a covenant of good faith and fair dealing does not generally give rise to an independent tort claim. *Friedman v. Colorado National Bank*, 825 P.2d 1033 (Colo.App.1991), *rev'd on other grounds*, 846 P.2d 159 (Colo.1993). *See also Colorado Interstate Gas Co. v. Chemco, Inc.*, 833 P.2d 786 (Colo.App.1991), *aff'd*, 854 P.2d 1232 (Colo.1993) (breach of an implied covenant of good faith and fair dealing implied at law in every contract does not give rise to an independent tort claim); *Centennial Square, Ltd. v. Resolution Trust Co.*, 815 P.2d 1002 (Colo. App.1991) (no tort claim for breach of implied contractual duties).

An exception to this rule prohibiting tort claims has been created by the supreme court in cases involving the breach of this covenant by an insurance carrier. *See Farmers Group, Inc. v. Trimble*, 691 P.2d 1138 (Colo.1984); *Travelers Insurance Co. v. Savio*, 706 P.2d 1258 (Colo.1985). In allowing a tort claim to be presented in that context, the court emphasized the special nature of the insurance contract and the quasi-fiduciary relationship between the insurer and the insured.

■ Thus far, however, the insurance law context has been the only area in which the supreme court has chosen to recognize a tort duty and, consequently, tort damages for breach of such a covenant. We do not perceive that the employment relationship here, even accepting the presence of an express or implied-in-fact covenant of good faith and fair dealing, implicates the same policy considerations and creates a special relationship similar to the quasi-fiduciary relationship found sufficient to engender a tort claim in *Trimble, supra*, or *Savio, supra*.

Rather, we conclude, as did the California supreme court in *Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 254 Cal.Rptr. 211, 765 P.2d 373 (1988), that, in contrast to the insurer-insured context, no special relationship should be deemed to exist in the usual employment relationship.

The *Foley* court recognized a number of factors which we deem relevant to our analysis. First:

> [A] breach [of contract] in the employment context does not place the employee in the same economic dilemma that an insured faces when an insurer in bad faith refuses to pay a claim or to accept a settlement offer within policy limits. When an insurer takes such actions, the insured cannot turn to the marketplace to find another insurance company willing to pay for the loss already incurred. The wrongfully terminated employee, however, can ... make reasonable efforts to seek alternative employment.

*Foley v. Interactive Data Corp.*, 254 Cal. Rptr. at 234, 765 P.2d at 396.

Second, the role of the employer differs from that of the quasi-public insurance company. An employer does not sell protection to its employees nor does it provide a public service in the same context. *Foley v. Interactive Data Corp., supra.*

Third, there is a fundamental difference in the relationships, since the insured and insurer's interest are often financially at odds. *Foley v. Interactive Data Corp., supra.*

Finally, when the conduct of an employer is particularly egregious, currently available remedies, including claims for outrageous conduct and compensatory damages for mental suffering caused by a willful or wanton breach of contract, offer effective and appropriate methods for obtaining additional relief in wrongful termination cases beyond general contract damages. *See Trimble v. City & County of Denver*, 697 P.2d 716 (Colo.1985); *Churchey v. Adolph Coors Co.*, 759 P.2d 1336

(Colo.1988); *Allabashi v. Lincoln National Sales Corp.*, 824 P.2d 1 (Colo.App.1991).

Moreover, predictability of the consequences of actions related to employment contracts is important to commercial stability. In order to achieve such stability, employers must not fear that every dismissal will necessarily give rise to potential tort recovery. As well, the necessarily flexible but sometimes amorphous standard of "good faith" does not provide a sufficient basis or standard to distinguish readily between cases in which only contract damages should be available and those in which tort damages are warranted.

The majority of cases that have considered whether a covenant of good faith and fair dealing exists in the usual employment relationship, or whether breach of such a covenant creates a tort claim for relief, have held as we do. *See, e.g., Fogel v. Trustees of Iowa College*, 446 N.W.2d 451 (Iowa 1989).

*Stahl v. Sun Microsystems, Inc.*, 775 F.Supp. 1394 (D.Colo.1991), relied upon by Decker, is inapposite. There, in determining motions to dismiss, the court simply noted that the plaintiff could assert a claim based upon an alleged breach of an express covenant of good faith and fair dealing. It did not, however, explicitly state that the plaintiff could pursue a *tort* action. Rather, the decision is silent concerning the theoretical underpinnings of such a claim.

Likewise, we do not read *Rosales v. AT & T Information Systems, Inc.*, 702 F.Supp. 1489 (D.Colo.1988), or *Price v. Federal Express Corp.*, 660 F.Supp. 1388 (D.Colo.1987), as explicitly recognizing that a *tort* claim may be brought for breach of such a covenant, be it express or implied. Indeed, the court in *Price* relied heavily upon *Continental Air Lines, Inc. v. Keenan*, 731 P.2d 708 (Colo. 1987), a decision of our supreme court that dealt with *contractual* claims and remedies in the employment context, not tort claims. However, to the extent that *Stahl, supra, Rosales, supra,* and *Price, supra,* can be read to allow a tort claim, we decline to follow them.

Decker further relies upon *Jet Courier Service, Inc. v. Mulei*, 771 P.2d 486 (Colo. 1989) to support his claim. That case dealt with a claim by an employer that its employee had breached a duty of loyalty when he solicited customers and co-employees to join his competing enterprise prior to terminating his own employment. The court indicated that a fiduciary duty can exist within the employment relationship under certain circumstances.

Apart from being factually dissimilar, *Mulei, supra,* is inapplicable here because Decker did not allege breach of a fiduciary duty.

Finally, citing *Olsen & Brown v. City of Englewood*, 867 P.2d 96 (Colo.App.1993), Decker asserts that promissory estoppel is a tort claim and that such a theory was expressly recognized to provide a means of recovery in *Continental Air Lines, Inc. v. Keenan, supra.* Thus, Decker reasons, this supports his assertion that he may bring a tort claim for breach of a covenant of good faith. Again, we need not address Decker's contention that promissory estoppel is a tort claim or that he can recover tort damages predicated upon this theory because he did not plead or pursue such a theory at trial.

■■■ Accordingly, because we conclude that no cause of action based upon a theory of breach of covenant of good faith and fair dealing may be presented in tort, the jury's award of noneconomic damages cannot stand. Moreover, because our supreme court has held that an award of punitive damages for breach of contract, even a willful and wanton breach, is improper, *Mortgage Finance, Inc. v. Podleski*, 742 P.2d 900 (Colo.1987), that award must likewise be vacated.

■■■ Damages for mental suffering may be recovered for willful or wanton breach of a contract when such damages are a natural and proximate consequence of the breach. *Trimble v. City & County of Denver, supra.* Here, however, the trial court did not require the jury to find a willful and wanton breach of contract prior to making such an award; rather, noneconomic damages were allowed on the basis of a simple breach, and willful and wanton conduct was referenced only in connection with the punitive damages claim.

Given the fact that the jury did find willful and wanton conduct, albeit in connection with

the punitive damages claim, this error might not, absent other factors, be fatal to the jury's award. However, the error was compounded by the language used in the instructions and the special verdict forms.

The instructions provided that the jury should consider "any noneconomic losses or injuries incurred to the present time or which will probably be incurred in the future, including an amount which will reasonably compensate Mr. Decker for any mental suffering." Similarly, the verdict form provided that the jury should consider "the amount of other damages, if any, incurred by Thomas Decker for inconvenience and emotional stress."

■ Thus, under the instructions and verdict form, the jury was allowed to evaluate more than "mental suffering." It was allowed to consider noneconomic losses in general, losses which are not compensable in a breach of contract action. In addition, it is impossible to determine what amount, if any, the jury would have awarded as damages for "mental suffering," rather than the combined noneconomic losses.

Accordingly, we vacate the award for noneconomic losses and punitive damages.

### IV.

■ BFI finally contends that the lost income award of $600,000 must be set aside because it ignores Decker's failure to mitigate damages; is based upon speculative evidence and thus violates the "rule of certainty"; and is counter to basic contract damage law. We conclude that because the cause was submitted to the jury on instructions covering both the cognizable contract claim and the improper tort claim, and it is impossible to discern from the special interrogatory verdict form under which theory the jury awarded economic losses, prejudice to BFI must be presumed, and a new trial as to these damages must be awarded. *See Mosher v. Schumm,* 114 Colo. 441, 166 P.2d 559 (1946) (if jury award cannot be ascertained as being based on valid theory it must be reversed); *Pettingell v. Moede,* 129 Colo. 484, 271 P.2d 1038 (1954) (improper to speculate that jury selected correct theory).

Here, the jury was given one instruction concerning the measure of damages to award for both breach of contract and the asserted tort claim. That instruction further allowed the jury to assess both economic and noneconomic losses, and did not differentiate between the theories asserted, nor the damages which could be recovered under each.

With regard to economic losses, the special verdict form asked the jury only to "state the amount of lost income, if any, suffered by Thomas Decker." Consequently, we cannot discern under which theory lost income was awarded. Therefore, we agree that the award, under these circumstances, cannot stand. *Cf. Cooley v. Big Horn Harvestore Systems, Inc.,* 813 P.2d 736 (Colo.1991) (inasmuch as separate verdict forms permitted jury to enter verdict while emphasizing distinct bases of the two separate claims, no juror confusion created).

### V.

■ In view of our conclusions above, the liability of BFI for breach of contract has been established; hence, only evidence relating to damages need be considered on retrial. *See Kitto v. Gilbert,* 39 Colo.App. 374, 570 P.2d 544 (1977) (appropriate to restrict scope of retrial when issues are sufficiently distinct such that determination of one issue would not affect resolution of the other and retrial can be accomplished without impeaching the prior verdict). On retrial, Decker may obtain, if requested and proven, damages for mental suffering upon proof of willful or wanton breach of contract. *See Trimble v. City & County of Denver, supra; CJI–CIV.3d,* 30:48 (1991).

Accordingly, the liability determination in favor of Decker on his breach of contract claim is affirmed; the balance of the judgment in favor of Decker is reversed; and the cause is remanded for a new trial on damages consistent with the views expressed in this opinion.

MARQUEZ and ROTHENBERG, JJ., concur.