Thomas H. DECKER, Petitioner,

v.

BROWNING-FERRIS INDUSTRIES OF COLORADO, INC., Respondent.

Jose CASTILLO, Petitioner,

v.

BROWNING-FERRIS INDUSTRIES OF COLORADO, INC., Respondent.

Nos. 95SC252, 95SC253.

Supreme Court of Colorado,
En Banc.

Jan. 13, 1997.

Rehearing Denied Feb. 24, 1997.

**437**

Stefan Kazmierski, Littleton, for Petitioners.

McNamara Law Firm, P.C., John N. McNamara, Jr., James D. Kilroy, Denver, and Baker & Hostetler, James A. Clark, Kathryn A. Elzi, Denver, for Respondent.

Barry D. Roseman, Denver, for Amicus Curiae Plaintiff Employment Lawyers Association.

Justice KIRSHBAUM delivered the Opinion of the Court.

In *Decker v. Browning–Ferris Industries of Colorado, Inc.*, 903 P.2d 1150 (Colo.App. 1995), and *Castillo v. Browning–Ferris Industries of Colorado, Inc.*, No. 93CA1428 (Colo.App. Jan. 12, 1995) (not selected for publication), the court of appeals determined, *inter alia*, that plaintiffs-petitioners Thomas H. Decker (Decker) and Jose Castillo (Castillo) could not recover damages in tort from their employer, defendant-respondent Browning–Ferris Industries of Colorado, Inc. (BFI), for breach of an express covenant of good faith and fair dealing because no such tort exists in Colorado in the employment context. The court of appeals also remanded both cases to the trial court for new trials on damages because it could not determine from the special verdict forms and instructions on

damages whether the juries had based their awards on the tort claims. Having granted certiorari to review the propriety of the court of appeals' decisions, we affirm in part, reverse in part, and remand the cases to the court of appeals with directions.

I

A

In June 1985, Decker obtained a position as a trash removal truck driver's helper with BFI. Decker was hired by Anthony Vagneur (Vagneur), the manager of BFI's Aspen, Colorado, district (the Aspen District), and was assigned to work in that district. In 1985, Decker earned a wage of $7.75 per hour.

Decker was subsequently promoted to the position of trash removal truck driver, which position Decker held for approximately five years. Decker received each pay increase for which he was eligible during his employment with BFI. In 1990, Vagneur wrote a letter to Decker informing Decker that he would receive a "discretionary" $400 bonus, congratulating Decker "on having a successful winter season with BFI," and stating that BFI appreciated Decker's work. The letter contained a statement that BFI "look[ed] forward to a long and lasting relationship" with Decker.

Vagneur was Decker's immediate supervisor until January 1991, when BFI discharged Vagneur and replaced him with Gerald P. Vandervelde (Vandervelde). In August 1991, Vandervelde terminated Decker's employment for the stated reason that Decker worked too slowly. At this time Decker earned a wage of $11.50 per hour.

After his discharge from BFI, Decker obtained employment for a period of time as a truck driver for a newspaper company, earning $95 per day without benefits. Decker subsequently opened a restaurant using retirement funds accumulated during his employment at BFI as well as money borrowed from family members. At the time of trial, the restaurant was not profitable.

B

Castillo was hired by Vagneur in 1989 as a trash removal truck driver's helper for BFI in BFI's Aspen district. During the course of his employment, Castillo was promoted to the position of driver and received approximately five pay raises. In 1990 Castillo received a letter from Vagneur congratulating Castillo on a "successful winter season with BFI," expressing BFI's appreciation for Castillo's work, informing Castillo of his entitlement to a "discretionary" $400 bonus, and containing a statement that BFI looked forward to a "long and lasting relationship" with Castillo.

In May 1991, Castillo broke his ankle while performing duties at BFI and reported the injury to BFI's workers' compensation physician. Castillo ultimately received workers' compensation benefits for this injury. In June 1991, Castillo obtained permission from his physician to return to BFI with the restriction that he perform only light duties. In August 1991 Vandervelde terminated Castillo's employment on the stated ground that Castillo was working too slowly.

After his employment at BFI was terminated, Castillo twice underwent surgery on his ankle. In December 1992, he worked for ten days as a dishwasher at a restaurant. He obtained a full-time position with another company in March 1993, earning a wage of $8.00 per hour with no benefits. At the time of trial, Castillo was still employed by that company.

C

In early 1992, Decker and Castillo filed separate civil actions in the trial court against BFI. Because both Decker and Castillo were represented by the same counsel and had been discharged under similar circumstances from their employment with BFI, their complaints were identical in many respects. Decker and Castillo alleged, *inter alia*, that they had been discharged in violation of a progressive disciplinary policy adopted by Vagneur—a claim for wrongful discharge which sounded in contract.[1] Deck-

1. Decker's complaint also alleged claims of discriminatory discharge, intentional interference

with right to unemployment compensation benefits, and outrageous conduct. Castillo's com-

er and Castillo subsequently filed amended complaints against BFI which contained an additional claim of "breach of covenant of good faith and fair dealing" based on alleged express promises by BFI management that they would be treated fairly. Although the amended complaints characterized this as a contract claim, the amended complaints requested compensatory, noneconomic and punitive damages with respect to this claim.

Castillo's action was tried first. At trial, Vagneur testified that he had personally promised to treat Castillo fairly. During the instruction conference, BFI objected to the instructions and special verdict forms which would permit the jury to award punitive damages on the breach of covenant of good faith and fair dealing claim. BFI argued that this claim sounded in contract, and punitive damages are not available for a breach of contract. The trial court held that while the covenant of good faith and fair dealing may have had its origins in contract law, its breach constituted a tort and could thus properly support an award of punitive damages. Aside from this one objection to the submission of punitive damages, BFI raised no other objection concerning the covenant of good faith and fair dealing claim, either as to the instruction defining its elements or to the special verdict form which permitted the jury to award damages for "inconvenience and emotional stress" in the event of its breach. At closing arguments, neither party made any distinction between contract and tort theories concerning the claim for breach of express covenant of good faith and fair dealing, but merely discussed whether BFI had breached its promises of fair treatment to Castillo.

The jury returned a verdict in favor of Castillo and against BFI. The jury determined that BFI had adopted a personnel policy concerning discipline and termination and had breached that policy. The jury also determined that BFI had promised fair treatment to Castillo in its employment decisions and had breached that promise as well. The jury awarded Castillo $33,500 in damages for lost income, determined that BFI's breach of covenant of good faith and fair dealing was attended by circumstances of willful and wanton conduct by BFI, and awarded Castillo punitive damages in the amount of $11,500. The jury did not award Castillo damages for inconvenience or emotional stress. BFI did not file any post-trial motions.

With respect to Decker's claims, BFI expressly stipulated at trial that it had promised to treat Decker fairly. BFI also raised the same objections concerning punitive damages that it had raised in Castillo's case, and the trial court likewise denied them for the same reasons. The parties similarly never raised the contract/tort distinction before the jury, but merely discussed whether BFI had breached its promises of fair treatment to Decker. The jury returned a verdict in favor of Decker and against BFI on the breach of disciplinary policy and breach of covenant of good faith and fair dealing claims. As in Castillo's case, the jury found that BFI had terminated Decker in violation of both its progressive disciplinary policy and its express promise of fair treatment. The jury also found that BFI had willfully and wantonly breached its promises of good faith and fair dealing. The jury awarded Decker $600,000 in damages for lost income, $80,000 in damages for inconvenience and emotional stress, and an additional $680,000 in punitive damages on the claim of breach of covenant of good faith and fair dealing.

BFI filed post-trial motions which focused largely on the matter of the punitive damage award. BFI adopted the trial court's characterization of the covenant of good faith and fair dealing claim as a tort, and stipulated that the claim had been tried as a tort. BFI argued that Colorado did not recognize a tort claim for breach of an express covenant of good faith and fair dealing in the employment context. Decker asserted that although in *Farmer v. Central Bancorporation, Inc.,* 761 P.2d 220, 221–22 (Colo.App. 1988), the court of appeals determined that no tort claim may be based on an implied covenant of good faith and fair dealing in the employment context, no Colorado appellate

plaint also alleged that he was discharged in retaliation for filing a workers' compensation claim against BFI. None of these claims are at issue here.

court had addressed the question of whether a tort claim for breach of an express covenant of good faith and fair dealing may be viable in the employment context. Decker argued that such a tort claim was analogous to the tort claim of breach of the implied covenant of good faith and fair dealing available in the context of insurance law. *See, e.g., Travelers Ins. Co. v. Savio,* 706 P.2d 1258, 1273–74 (Colo.1985). The trial court denied BFI's post-trial motions for the reasons stated in Decker's opposition brief.

## D

BFI appealed both cases. Throughout the appellate proceedings before this court and the court of appeals, the parties have referred to the breach of disciplinary policy claim as the "contract" claim, and the breach of express covenant of good faith and fair dealing claim as the "tort" claim. The primary issue presented which the parties framed for the court of appeals was whether Colorado recognized a tort claim for breach of an express covenant of good faith and fair dealing in the employment context.

In Decker's case, the court of appeals accepted the parties' characterizations of the breach of disciplinary policy claim as a contract claim and the breach of covenant of good faith and fair dealing claim as a tort claim. The court of appeals affirmed the jury's determination of liability on the breach of contract claim, but determined that because Colorado does not recognize a tort claim in the employment context for breach of covenant of good faith and fair dealing, the trial court erroneously allowed the jury to consider that claim. *Decker,* 903 P.2d at 1156–57. The court of appeals concluded that in the absence of a viable tort claim, the awards for punitive damages and noneconomic damages must be vacated. *Id.* at 1157.

The court of appeals held that the punitive damage award could not be based upon the breach of the progressive disciplinary policy claim because it was a contract claim. *Id.* With respect to the award of noneconomic damages, the court observed that while damages for "mental suffering" are sometimes recoverable for willful and wanton breach of contract, the jury in this case was not re-

quested to find willful and wanton breach of the progressive disciplinary policy. *Id.* at 1157–58. The court of appeals also determined that the award of noneconomic damages was improper because noneconomic damages may be awarded in a breach of contract action only for "mental suffering," and the jury instructions allowed the jury to consider future noneconomic losses as well as inconvenience and emotional stress. *Id.* at 1158. The court of appeals noted that Decker could on retrial seek damages for mental suffering for breach of contract if he proved that BFI's breach of the progressive disciplinary policy was willful or wanton. *Id.* In setting aside the award of $600,000 for lost income, the court of appeals concluded that it was impossible to discern from the special verdict form under which theory the lost income was awarded, and that it must be presumed that BFI had been prejudiced by the special verdict form. *Id.*

The court of appeals employed an identical analysis in Castillo's appeal. It held that Colorado does not recognize a tort claim for breach of covenant of good faith and fair dealing in the context of employment relations, and set aside the jury's award of punitive damages based on that claim. *Castillo,* No. 93CA1428, slip op. at 4. It also affirmed the jury's verdict on liability for breach of the progressive disciplinary policy, but held that the award of economic damages had to be vacated because it was impossible to determine whether it had been awarded under the proper contract theory or the improper tort theory. *Id.* at 4–5. The court of appeals thus remanded both cases for new trials on damages.

## II

Decker and Castillo argue that tort claims for breach of express covenant of good faith and fair dealing are cognizable in Colorado in the employment context. We reject this argument.

## A

■ As a preliminary matter, we note that the issues framed by the parties here and addressed by the court of appeals are in

tension with the issues submitted to and determined by the juries in these cases. BFI maintains that in each case the claim for breach of express covenant of good faith and fair dealing was "tried as a tort." Decker and Castillo agree, and urge us to recognize the viability of such a tort claim in Colorado.

However, the pleadings, closing arguments, instructions, and verdict forms made no such distinction. To the contrary, the language of the pleadings, instructions, and verdict forms establish the claims as contract claims. In denying BFI's objection to punitive damage instructions in *Castillo,* the trial court stated its view that Castillo's claim for breach of covenant of good faith and fair dealing was a tort claim. Nevertheless, the parties never amended their pleadings to reflect such distinction and never suggested to the juries that some of the claims were tort claims. While the issues framed for appeal properly sought review of the trial court's implied conclusion that a tort claim for breach of express covenant of good faith and fair dealing exists in Colorado, in determining what effect the contrary conclusion reached by the court of appeals might have on the jury verdicts, we consider those verdicts in light of the manner in which the cases were tried.

Decker and Castillo asserted claims against BFI for breach of covenant of good faith and fair dealing on the ground that BFI admittedly made express promises to them to treat them fairly. The amended complaints do not allege that BFI breached legal duties in discharging Decker and Castillo in bad faith. The amended complaints allege that BFI's actions constituted breaches of express promises of fair and equitable treatment. Such claims sound in contract, not in tort.[2]

Certain trial court rulings contributed to the confusion in these cases. In denying BFI's motion for summary judgment in Cas-

tillo's case, the trial court stated that "in some circumstances, an implied covenant of good faith can arise in the employment context if there are expressed representations to the employees that they are guaranteed fair treatment and equitable dealing." Subsequently, in denying BFI's objection to instructions and verdict forms permitting an award of punitive damages on Castillo's breach of covenant claim on the ground that such an award would be improper because the claim was a contract claim, the trial court made the following statements:

> With regard to your objection concerning a punitive instruction on punitive damages as to the claim for breach of the covenant of good faith and fair dealing, I'm going to give that instruction because I believe that that claim, being in the nature of a tort claim—although it may have its origins in contract law—nonetheless, can be characterized fairly as a tort claim; and just as in most or almost all other tort claims, if the circumstances are warranted and there's evidence supporting a claim for punitive damages claim, the court is required to so instruct the jury.

While these rulings in effect altered the basic theory of recovery established by the pleadings, no effort was made to inform the jury of such change.[3]

The amended complaints alleged claims of breach of express covenant of good faith and fair dealing as contract claims. More importantly, the jury instructions related only to contract theories of recovery. The jury instructions on the claim of breach of covenant of good faith and fair dealing read in pertinent part as follows:

> In order for the plaintiff, [Castillo/Decker], to recover from the defendant, BFI, on his claim for breach of the covenant of good faith and fair dealing, you must find that all of the following have been proven:

---

2. The amended complaints characterized the breach of express covenant of good faith and fair dealing claims as claims for breach of contract, although the amended complaints contained requests for punitive damages for the contractual breaches. However, the record reveals that BFI did not object to the demands for punitive damages in response to the alleged breaches of con-

tract until the instruction conference at Castillo's trial.

3. Parallel rulings in Decker's later trial were made and disposed of by reference to the record from Castillo's trial.

1. BFI expressly told [Castillo/Decker] that he would be treated fairly and in good faith in matters of his employment;

2. BFI demonstrated to [Castillo/Decker] a willingness to be bound by such policy;

3. [Castillo/Decker] reasonably understood that BFI was promising fair treatment as a part of the terms and conditions of employment, and, with that understanding, [Castillo/Decker] continued his employment with BFI; and

4. BFI discharged [Castillo/Decker] without complying with its statements of good faith and fair treatment.

The special verdict form in *Castillo* contained the following interrogatories:

Did BFI promise fair treatment to Jose Castillo in its employment decisions? (Yes or No)

Did BFI breach its promise of fair treatment in its firing of Jose Castillo? (Yes or No)

The jury answered yes to both questions. The special verdict form in *Decker* and corresponding response are substantially identical. Neither party objected to the contents of these instructions and special verdict forms.[4]

The record thus reflects that the juries were not asked to find whether BFI owed or breached any legal duty of good faith and fair dealing to Decker and Castillo. Rather, the juries were asked to find, and did find, that BFI had made and breached promises of good faith and fair dealing to Decker and Castillo. The juries found that BFI breached contracts, not that BFI committed torts.

### B

In view of the trial court's characterization of the claims of good faith and fair dealing as "tort" claims, in its motion for new trial and on appeal BFI has argued that no such tort claim is cognizable in Colorado.

Decker and Castillo argue on appeal that an independent tort claim for breach of express covenant of good faith and fair dealing should be recognized in the employment context. The court of appeals rejected the arguments of Decker and Castillo. We affirm the court of appeals' resolution of this issue.

### 1

The court of appeals has declined to recognize the existence of an implied covenant of good faith and fair dealing in the context of otherwise at-will employment contracts.[5] *Farmer v. Central Bancorporation, Inc.*, 761 P.2d 220, 221–22 (Colo.App.1988); *Montoya v. Local Union III, Int'l Bhd. of Elec. Workers*, 755 P.2d 1221, 1225 (Colo.App.1988); *Pittman v. Larson Distrib. Co.*, 724 P.2d 1379, 1385 (Colo.App.1986). The court of appeals has also determined that in contractual disputes not arising in the employment context no independent tort claim for alleged breach of an implied covenant of good faith and fair dealing exists. *See Centennial Square, Ltd. v. Resolution Trust Co.*, 815 P.2d 1002, 1004 (Colo.App.1991); *Colorado Interstate Gas Co. v. Chemco, Inc.*, 833 P.2d 786, 792–93 (Colo.App.1991), *aff'd on other grounds*, 854 P.2d 1232 (Colo.1993); *Friedman v. Colorado Nat'l Bank*, 825 P.2d 1033, 1042–43 (Colo.App.1991), *aff'd on other grounds*, 846 P.2d 159 (Colo.1993).

Other jurisdictions have similarly concluded that an employee may not recover in tort from an employer on the basis of a claim for breach of an implied covenant of good faith and fair dealing. *See, e.g., Hoffman–La Roche, Inc. v. Campbell*, 512 So.2d 725, 738 (Ala.1987); *Wagenseller v. Scottsdale Mem'l Hosp.*, 147 Ariz. 370, 385, 710 P.2d 1025, 1040 (1985); *Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 254 Cal.Rptr. 211, 765 P.2d 373 (1988); *Metcalf v. Intermountain Gas Co.*, 116 Idaho 622, 626, 778 P.2d 744, 748 (1989); *Martin v. Federal Life Ins. Co.*, 109 Ill.

---

**4.** Some of the instructions on the breach of covenant of good faith and fair dealing in each case refer to "express" representations of fair treatment by BFI, while other instructions refer to an "implied" covenant. The special verdict forms refer only to BFI's "promises" and do not specify whether those promises were express or implied.

**5.** The questions in this case arise in the context of claims alleging breaches of express covenants of good faith and fair dealing in the employment context. We therefore express no opinion with respect to questions relating to the recognition of an implied covenant of good faith and fair dealing in the employment context.

App.3d 596, 65 Ill.Dec. 143, 151, 440 N.E.2d 998, 1006 (1982); *Noye v. Hoffmann–La Roche Inc.*, 238 N.J.Super. 430, 570 A.2d 12, 15 (App.Div.1990); *Bourgeous v. Horizon Healthcare Corp.*, 117 N.M. 434, 439, 872 P.2d 852, 857 (1994); *Dvorak v. Pluswood Wis., Inc.*, 121 Wis.2d 218, 358 N.W.2d 544, 546 (Ct.App.1984); *see also ARCO Alaska, Inc. v. Akers*, 753 P.2d 1150, 1154 (Alaska 1988) (tort recovery for breach of implied covenant of good faith and fair dealing permitted only where conduct "rises to the level of a traditionally recognized tort").[6]

 These cases recognize that parties to a contract may as a part of their agreement enter into an express covenant of good faith and fair dealing. Such a covenant is designed to ensure the enforcement of other obligations assumed by the parties, *see Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo. 1995); *Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 254 Cal.Rptr. 211, 217, 765 P.2d 373, 389 (1988), and in effect becomes a term of the employment agreement. *See Wagenseller v. Scottsdale Mem'l Hosp.*, 147 Ariz. 370, 383, 710 P.2d 1025, 1038 (1985); *Foley*, 254 Cal.Rptr. at 227, 765 P.2d at 389; *Metcalf v. Intermountain Gas Co.*, 116 Idaho 622, 627, 778 P.2d 744, 749 (1989). The covenant of good faith and fair dealing in employment matters thus serves to protect the integrity of all of the promises made by the parties to the agreement setting forth the terms and conditions of employment. *See Metcalf*, 116 Idaho at 627, 778 P.2d at 749. A breach of such a covenant therefore constitutes a breach of an obligation created by the contract, *Foley*, 254 Cal.Rptr. at 232, 765 P.2d at 394; *Metcalf*, 116 Idaho at 627, 778 P.2d at 749, rather than breach of an obligation arising independently from the contract, *see Dvorak v. Pluswood Wis., Inc.*, 121 Wis.2d 218, 358 N.W.2d 544, 545–46 (Ct. App.1984).

2

 We have recognized in the context of insurance contracts that a party to such an agreement may recover damages in tort for breach of an implied covenant of good faith and fair dealing. *Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1273–74 (Colo.1985); *Farmers Group, Inc. v. Trimble*, 691 P.2d 1138, 1141–42 (Colo.1984). An insurer's tort liability for breach of an implied duty of good faith and fair dealing arises from the nature of the insurance contract as well as from the relationship between the insurer and the insured. *Lira v. Shelter Ins. Co.*, 913 P.2d 514, 516 (Colo.1996); *Trimble*, 691 P.2d at 1141; *see Savio*, 706 P.2d at 1272. In contrast to a party who seeks to secure commercial advantage in the context of a general commercial contract, an insured who enters into a contract of insurance seeks to obtain "financial security and protection against calamity." *Trimble*, 691 P.2d at 1141. Because an insurer's bad faith refusal to pay valid claims defeats the very purpose of the insurance contract, a special duty is imposed upon an insurer to deal in good faith with an insured. *Id.* This "quasi-fiduciary" relationship between an insurer and an insured is thus based in part on this special contract. *Id.* In addition, when an insured suffers a loss, the insured becomes "particularly vulnerable" to the insurer. *Savio*, 706 P.2d at 1273 (citing *Bibeault v. Hanover Ins. Co.*, 417 A.2d 313, 318 (R.I.1980)). For example, an insurer may delay payment of a claim to the insured in the hope of settling for an amount less than what might be due under the contract. Thus the implied covenant of good faith and fair dealing in the context of insurance contracts also arises from the heightened reliance necessarily placed by an insured on the insurer. *K Mart Corp. v. Ponsock*, 103 Nev. 39, 732 P.2d 1364, 1370 (1987).

Decker and Castillo suggest that an employment relationship possesses many of the characteristics found in the relationship be-

---

**6.** Decker and Castillo observe that some courts have recognized the availability of a claim for breach of an express covenant of good faith and fair dealing in the employment context. *See Stahl v. Sun Microsystems, Inc.*, 775 F.Supp. 1394 (D.Colo.1991), aff'd, 19 F.3d 533 (10th Cir. 1994); *Rosales v. AT & T Info. Sys., Inc.*, 702 F.Supp. 1489 (D.Colo.1988); *Price v. Federal Express Corp.*, 660 F.Supp. 1388 (D.Colo.1987). Although the opinions in these cases do suggest that such a claim may exist in the employment context, none of the opinions addresses the question of whether such a claim is cognizable in tort.

tween an insurer and an insured in support of their argument that a covenant of good faith and fair dealing should be imposed in the former context. The insurance analogy has been rejected by several courts. *E.g., Wagenseller,* 147 Ariz. at 385, 710 P.2d at 1040; *Foley,* 254 Cal.Rptr. at 234, 765 P.2d at 396; *Barry v. Posi–Seal Int'l,* 40 Conn.App. 577, 672 A.2d 514, 520 (1996); *Noye v. Hoffmann–La Roche Inc.,* 238 N.J.Super. 430, 570 A.2d 12, 15 (App.Div.1990); *Bourgeous v. Horizon Healthcare Corp.,* 117 N.M. 434, 872 P.2d 852, 857 (1994); *Dvorak v. Pluswood Wis., Inc.,* 121 Wis.2d 218, 358 N.W.2d 544, 546 (Ct.App.1984).

There are certain parallels between insurance and employment contexts. An insurance contract protects the insured from such calamities as medical emergencies and accidental property damage. An employment contract is of even greater significance to an employee because it provides the means for the employee to meet his or her basic needs. Thus both insurance and employment contracts afford financial security to the insured and the employee, respectively.

However, the positions of insureds and of employees who suffer harm as a result of unreasonable conduct are not always similar. A wrongfully discharged employee may be able to obtain alternative employment and must make reasonable attempts to do so to mitigate damages. *Foley,* 254 Cal.Rptr. at 244, 765 P.2d at 396; *see Technical Computer Servs., Inc. v. Buckley,* 844 P.2d 1249, 1255 (Colo.App.1992). Unreasonably discharged employees who are not able to secure alternative employment may recover damages for lost income.[7] *See* 8 Employment Coordinator ¶ 29,509 (1993); *see also Western Distrib. Co. v. Diodosio,* 841 P.2d 1053, 1058 (Colo.1992); *Saxonia Mining & Reduction Co. v. Cook,* 7 Colo. 569, 572, 4 P. 1111, 1112–13 (1884). In contrast, an insured whose valid claim for coverage has been denied in bad faith has no recourse in the marketplace. *Foley,* 254 Cal.Rptr. at 244, 765 P.2d at 396. No other insurance company will assume responsibility for the in-

sured's losses. *Id.* It is also noteworthy that the interests of insureds and insurers may conflict. *Id.* An insurer has an incentive to delay payment of a valid claim in the hope of settling for an amount less than the sum owed pursuant to the policy. *Savio,* 706 P.2d at 1273 (citing *Bibeault v. Hanover Ins. Co.,* 417 A.2d 313, 318 (R.I.1980)). In contrast, employees as well as employers generally seek to promote the business interests of the employer. Of course, the possibility of arbitrary and unreasonable treatment by an employer always exists—a phenomenon which can not be prevented by reliance on the dynamics of the marketplace.

Some courts have applied rationales developed in insurance contract cases to recognize a tort claim for breach of covenant of good faith and fair dealing in employment cases. In *K Mart Corp. v. Ponsock,* 103 Nev. 39, 732 P.2d 1364, 1370 (1987), the plaintiff was employed by the defendant as a forklift driver. The defendant consistently characterized the plaintiff as an excellent employee. *Id.* at 1366. The plaintiff's retirement benefits were due to vest after the plaintiff had been employed for ten years. *Id.* A few months before the plaintiff's retirement benefits were due to vest, the plaintiff was terminated by the defendant, allegedly for applying paint to the battery cover of the forklift which he operated. *Id.* The plaintiff, without securing permission from his supervisor, had applied paint from a can he discovered earlier in the day to the battery cover in order to remedy the deteriorating condition of that cover. *Id.* When asked by a maintenance worker to remove the paint, the plaintiff complied. *Id.* at 1367. The plaintiff was reprimanded by a supervisor for his conduct, and his "separation report" provided that he had been terminated for defacing company property with misappropriated merchandise (the paint) on company time. *Id.*

A jury determined that the defendant had in reality terminated the plaintiff in order to avoid paying the plaintiff's retirement benefits. *See id.* at 1368. The court concluded that the plaintiff was entitled to tort dam-

---

7. Of course, a wrongfully discharged employee may suffer injuries not compensable by contract damages, such as foreclosure of a mortgage on a home because of the owner employee's inability to make required payments.

ages, reasoning that the employee was highly economically dependent upon the employer and vulnerable to the employer's abuse because of that dependency. *Id.* at 1372. The court determined that the particular employment relationship at issue was similar to the relationship between an insured and an insurer because the plaintiff specially relied on the defendant's apparent commitment to retain the plaintiff until retirement. *Id.*

The court limited its holding to the particular factual circumstances of the case as follows: "The special relationships of trust between *this* employer and *this* employee under *this* contract under *this* type of abusive and arbitrary dismissal cries out for relief and for a remedy beyond that traditionally flowing from breach of contract." *Id.* (emphasis in original). In *D'Angelo v. Gardner*, 107 Nev. 704, 819 P.2d 206 (1991), the Supreme Court of Nevada distinguished *Ponsock* in holding that a plaintiff employee was not entitled to an award of tort damages, comparing the facts of that case to the facts of *Ponsock* and describing *Ponsock* as "the exemplar for that narrow class of cases in which, because of the relationship of employer to employee, the offending conduct 'goes well beyond the bounds of ordinary liability for breach of contract.'" *D'Angelo*, 819 P.2d at 215 (quoting *Ponsock*, 732 P.2d at 1370); *see Martin v. Sears, Roebuck & Co.*, 111 Nev. 923, 899 P.2d 551, 555 (1995) (characterizing *Ponsock* as "fact-specific").

In *Wilder v. Cody Country Chamber of Commerce*, 868 P.2d 211 (Wyo.1994), the Supreme Court of Wyoming observed that a relationship similar to that between an insurer and insured "may be present" between an employer and employee, but determined that such a relationship was not present in that case. *Id.* at 220–22. The court opined that recovery in tort might be warranted if the conduct complained of was "egregious" and that the special relationship of trust and reliance asserted for recovery of tort damages was not established solely by the em-

ployment relationship itself, but by such other circumstances as the existence of separate consideration, common law or statutorily established rights, or special rights resulting from longevity of service. *Id.* at 220. The court determined that the employment relationship in that case was not one of special trust and reliance and concluded that the employer had not breached the implied covenant of good faith and fair dealing. *Id.* at 222; *see also Drake v. Cheyenne Newspapers, Inc.*, 891 P.2d 80, 83 (Wyo.1995).

In view of these cases, it is not clear that the rationales supporting recognition of the tort of breach of covenant of good faith and fair dealing in the context of insurance contracts require recognition of a tort claim for bad faith breach of an express covenant of good faith and fair dealing in the employment context.

### 3

■ However, we conclude that a tort claim for breach of covenant of good faith and fair dealing need not be recognized in the employment context because we have previously recognized the existence a tort claim for wrongful discharge in violation of public policy. *Rocky Mountain Hosp. & Med. Serv. v. Mariani*, 916 P.2d 519, 521 (Colo.1996). That claim, as well as tort claims for bad faith breach of insurance contracts, are firmly grounded in legislative or other public policy declarations thus insuring that all interested parties are aware of the scope of the relevant duty. In *Mariani*, we found support for recognition of a tort claim for wrongful discharge in violation of public policy in the State Board of Accountancy Rules of Professional Conduct. *Mariani*, 916 P.2d at 525. Our recognition of the tort of bad faith breach of an insurance contract in *Farmers Group, Inc. v. Trimble*, 691 P.2d 1138 (Colo.1984), is also grounded in the provisions of the Colorado Auto Accident Reparations Act, sections 10–4–701 to –725, 4A C.R.S. (1994).[8]

8. Three years after we decided *Trimble*, the General Assembly expanded the scope of tort claims for breach of the implied covenant of good faith and fair dealing by the adoption of § 10–3–

1113(1), 4A C.R.S. (1994), which statute contains the following provisions:

In any civil action for damages founded upon contract, or tort, or both against an insurance company, the trier of fact may be instructed

It is thus apparent that the torts of wrongful discharge in violation of public policy and bad faith breach of the implied covenant of good faith and fair dealing inherent in insurance contracts are based on administrative or legislative declarations of public policy. As a result, employers and insurers have notice of the scope of their duties to their employees and insureds. No parallel declarations of public policy have been articulated by the General Assembly or other governmental institutions with respect to the employment context. In the absence of such declarations of public policy, there is no appropriate basis upon which to ground a tort of breach of an express covenant of good faith and fair dealing in employment contracts. To the extent the contents of employment contracts and insurance contracts are similar, the tort of wrongful termination of an employment contract in violation of public policy represents an appropriate analog to the tort of bad faith breach of the implied covenant of good faith and fair dealing of an insurance contract.

### III

For the foregoing reasons, we decline to recognize the existence in this jurisdiction of a tort claim for breach of an express covenant of good faith and fair dealing in employment contracts. However, we have concluded that the claims for breach of express covenant of good faith and fair dealing asserted by Decker and Castillo sound in contract, not in tort. We therefore address issues respecting the damage awards in these cases.

### A

■ Decker and Castillo assert that the court of appeals erred in reversing the judgments of punitive damages entered by the trial court. We reject this argument.

■ In *Mortgage Finance, Inc. v. Podleski*, 742 P.2d 900 (Colo.1987), we empha-

sized that the law of torts and the law of contracts reflect different policies and, therefore, recognize different remedies. The law of contracts does not seek to compel performance of a contract by punishing a breach, but rather to compensate the promisee for losses sustained as a result of a breach. *Id.* at 902. The law of torts is premised upon legal duties imposed by law. *Id.* at 903. Breach of such legal duties can, in certain circumstances, justify the imposition of exemplary damages in order to punish the defendant and deter others from similar conduct in the future. *Id.* at 902–03.

Here, as in *Podleski*, we are faced with conduct which amounts to a breach of contract, and "no tort claim was before the trial court at the conclusion of the trial." *Id.* at 903. Under such circumstances, the awards of punitive damages must be vacated, as the court of appeals determined.

### B

■ Decker and Castillo argue that the court of appeals erroneously reversed the juries' verdicts awarding them economic damages. We agree.

In *Castillo*, the jury was given the following instruction on damages:

If you find in favor of the plaintiff, Jose Castillo, you shall award as his actual damages, insofar as they have been proved by a preponderance of the evidence and insofar as they were caused by the defendant's wrongful or retaliatory discharge of the plaintiff, an amount which will reasonably compensate the plaintiff for his losses, if any.

In determining such damages, you shall consider the following:

1. any noneconomic losses or injuries incurred to the present time or which will probably be incurred in the future, including an amount which will reasonably com-

---

that the insurer owes its insured the duty of good faith and fair dealing, which duty is breached if the insurer delays or denies payment without a reasonable basis for its delay or denial.

This statute reflects the public policy concerns underlying the tort of breach of the implied cove-

nant of good faith and fair dealing in an insurance context. In this regard, the tort for bad faith insurance breach has been described as a "public policy tort." Brian F. Berger, Note, *Defining Public Policy Torts in At–Will Dismissals*, 34 Stan. L.Rev. 153, 163–65 (1981–82).

pensate the plaintiff for any mental suffering; and

2. any economic losses incurred to the present time or which will probably be incurred in the future, including back pay, loss of future pay and loss of benefits.

The parallel instruction in *Decker* contains almost identical language.[9] Similarly, although the special verdict forms require the juries to reach separate liability determinations with respect to the breach of progressive disciplinary policy and breach of covenant of good faith and fair dealing claims, such forms do not require the juries to distinguish between the two claims when determining whether damages for lost income, inconvenience and emotional stress should be awarded. In each case, the special verdict form provides that if the jury finds BFI liable on either claim, the jury should "state the amount of lost income, if any, suffered...." In addition, the special verdict forms allowed the juries to award damages for "inconvenience and emotional stress" if they answered "yes" to liability on either the breach of disciplinary policy or breach of covenant of good faith and fair dealing claim.

The court of appeals concluded that it was "impossible" to discern whether the awards for economic damages were based on the proper breach of disciplinary policy claim or the improper breach of covenant of good faith and fair dealing claim. *Decker*, 903 P.2d at 1158. However, as we have observed, in each case both the claim for breach of the progressive disciplinary policy and the claim for breach of express covenant of good faith and fair dealing were pled,

tried, and found by the jury to be breaches of an express contractual obligation. The juries' calculations of economic damages in these cases were limited by the instructions to "back pay, loss of future pay and loss of benefits," which are appropriate economic damages designed to put the wrongfully discharged employee in the same position he or she would have been in had the employer not breach the employment contract. 8 Employment Coordinator ¶ 29,509 (1993).[10] Under the circumstances of these cases, we conclude that the juries' awards of economic damages to Decker and to Castillo should be affirmed.

## C

■ Decker argues that in the event that we should refuse to recognize a tort claim for breach of express covenant of good faith and fair dealing, we should treat the jury's findings on that claim as a finding that BFI's breach of contract was attended by willful and wanton conduct and thereby uphold the jury's award of $80,000 in noneconomic damages.[11] We agree.

The special verdict form submitted to the jury authorized an award of punitive damages if the jury found "with respect to Thomas Decker's claim for breach of the covenant of good faith and fair dealing, that the injury, if any, was attended by circumstances of willful and wanton conduct by BFI." The jury found that BFI's conduct in firing Decker was willful and wanton.

■ Although we have concluded that the juries' awards of punitive damages must be

---

9. The instruction in *Decker* stated:

If you find in favor of the plaintiff, Thomas H. Decker, you shall award as his actual damages, insofar as they have been proved by a preponderance of the evidence and insofar as they were caused by BFI's wrongful discharge of Mr. Decker, an amount which will reasonably compensate Mr. Decker for his losses, if any.

In determining such damages, you shall consider the following:

1. any noneconomic losses or injuries incurred to the present time or which will probably be incurred in the future, including an amount which will reasonably compensate Mr. Decker for any mental suffering; and

2. any economic losses incurred to the present time or which will probably be in-

curred in the future, including back pay, loss of future pay and loss of benefits.

10. We reject BFI's argument that the awards of lost income include amounts for noneconomic damages. The special verdict forms clearly differentiate between these two categories of actual damages and contain separate interrogatories with respect to damages for "lost income" and damages for "inconvenience and emotional stress."

11. We confine our analysis here to Decker's case because the jury in Castillo's case did not award any noneconomic damages for inconvenience and emotional stress.

vacated, the jury's special verdict with respect to Decker's claims establishes that the jury found that BFI breached an express contractual obligation to Decker and that such breach was characterized by willful and wanton conduct. Damages for "mental suffering" are recoverable on a breach of contract claim when the breach is accompanied by willful and wanton conduct and when the damages are a natural and proximate consequence of such conduct. *Trimble v. City & County of Denver,* 697 P.2d 716, 731 (Colo. 1985). Here, the jury awarded noneconomic damages specifically for "inconvenience and emotional stress" caused in part by BFI's breach of its promise of fair treatment. Thus, the award of $80,000 in noneconomic damages for BFI's willful and wanton breach of its express covenant of good faith and fair dealing is proper under Colorado law, and must be upheld.[12]

### D

Because the court of appeals reversed all of the damage awards against BFI, it did not address BFI's claim that the jury's award of $600,000 to Decker in lost wages was excessive.[13] As noted in part I(A), at the time of his discharge Decker earned a wage of $11.50 per hour. Considering the testimony of Decker's economic expert in the light most favorable to Decker as the verdict winner, it is clear that the jury's award of $600,000 in economic damages includes a substantial amount for front pay, or lost future wages.

Thus, while we affirm the jury's finding that BFI is liable to Decker for economic damages, we remand Decker's case to the court of appeals for consideration of BFI's arguments challenging the amount of the jury's award of economic damages in that case.

### IV

For the foregoing reasons, we affirm the judgments of the court of appeals insofar as that court determined that no tort claim for breach of an express covenant of good faith and fair dealing exists in the employment context in Colorado. We reverse the court of appeals' judgments insofar as they set aside the jury verdicts awarding Decker and Castillo economic damages and awarding Decker noneconomic damages. We remand the cases to the court of appeals with directions to reinstate those portions of the jury verdicts and to conduct further proceedings in Decker's case, No. 95SC252, consistent with this opinion.

12. The record also reveals that BFI failed to raise any specific objection at trial to the special verdict form which permitted the jury to award noneconomic damages to Decker for what BFI maintained were contractual claims. Such inaction constitutes waiver of the issue. *See Bear Valley Church of Christ v. DeBose,* 928 P.2d 1315 (Colo. 1996). Moreover, on appeal to the court of appeals BFI did not challenge the $80,000

award of noneconomic damages to Decker, and has not responded to Decker's argument before us with respect to that portion of the jury's verdict.

13. BFI did not challenge the award of $33,500 in economic damages to Castillo as being excessive.