**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 4 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

THOMAS L. KERSTIEN,

Plaintiff-Appellant,

v.

MCGRAW-HILL COMPANIES, INC.,
a New York corporation; PAUL E.
CLECKNER; HOWARD W. SMITH,

Defendants-Appellees.

No. 99-1095
(D.C. No. 96-Z-1087)
(D. Colo.)

**ORDER AND JUDGMENT** *

Before **BRISCOE** , **ANDERSON** , and **MURPHY** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination

of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

_____

* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff initiated this action against the defendant corporation and two of its management employees following his termination as a vice president of North American sales for Compustat, a division of defendant McGraw-Hill. In his amended complaint, he alleged that his discharge constituted a breach of contract based on language in the employee handbook; that the discharge was wrongful based on the doctrine of promissory estoppel, also based on the handbook; that defendants breached an express covenant of good faith and fair dealing; that defendants breached certain assurances made to him, violated the Colorado Wage Claim Act, and intentionally interfered with contractual relations; that the individual defendants conspired to terminate plaintiff's employment; that all defendants caused plaintiff emotional distress by action constituting extreme and outrageous conduct; and that defendants violated both state and federal age discrimination statutes.

The majority of the state law claims (wrongful discharge, intentional interference with contractual relations, civil conspiracy, and outrageous conduct), were dismissed on defendants' motion for summary judgment. The Colorado Wage Claims Act claim was resolved by the parties and subsequently dismissed with prejudice. Plaintiff voluntarily dismissed his state age discrimination claim, and, following a jury trial on the federal age discrimination claim, a verdict was entered in favor of defendants.

In this appeal, plaintiff contends there were genuine issues of material fact with respect to his claims of breach of contract and promissory estoppel, tortious interference with contractual relations, civil conspiracy, and outrageous conduct. See Appellant's Br. at 1-2. He does not challenge the jury verdict on the federal age discrimination claim.

Briefly, the underlying facts are as follows. Plaintiff was the vice president of North American sales with McGraw-Hill's Compustat Division, a high-level executive position. Defendant Cleckner was the head of Compustat and defendant Smith was the vice president of sales and marketing. Smith was plaintiff's immediate superior. In mid-1995, a Compustat sales employee, who reported to plaintiff, booked a sale to a sister company, an arrangement subsequently undone by either Cleckner or Smith, apparently because it violated company policies. The employee later contacted plaintiff asking why he was not receiving his anticipated sales commission and plaintiff made inquiry of Smith. Smith returned an explanation by voice mail.

Plaintiff prepared a voice mail response to the sales employee, which also forwarded Smith's voice mail to the employee. The comments plaintiff added to Smith's voice mail (which plaintiff admitted were intemperate and defendants claimed were insubordinate and divisive) were also forwarded (no doubt inadvertently) to Smith.

Smith and Cleckner decided the comments made by plaintiff to the sales employee were insubordinate, undermined Smith's authority, and had misrepresented the events in question. They met with Diane Gunter of the human resources department and a representative of the legal department. Smith, Cleckner, and Gunter discussed the matter with corporate headquarters. Termination was discussed as an option.

Plaintiff was called into Smith's office at 9 a.m., Monday, August 21, 1995, at which time the voice mail message was played for plaintiff. Gunter was present at the time. Plaintiff apologized and admitted he had made a mistake. According to plaintiff, he was given the choice of resigning immediately or being placed on "final warning," which stated in part that any further action "such as attempting to undermine management, displaying a condescending attitude, making negative statements or behaving in a manner detrimental to McGraw-Hill as determined by [Smith]" would result in immediate dismissal. Appellees' Supp. App. at 23 (emphasis added). Plaintiff was told to leave the office and to stay home to consider his decision.

Plaintiff admits to being told by both Gunter and Cleckner that he could not take a previously scheduled trip to Chicago. Although he had decided by the following day that he would accept the final warning, he knew he needed Smith's and Cleckner's permission to be reinstated and left a message telling Smith and

Cleckner of his decision. Cleckner later responded, accepting plaintiff's decision to remain on the job under the final warning and stating he wished to meet with plaintiff the following Monday, August 28. Plaintiff subsequently admitted that the only reference to the Chicago trip he had ever heard from Cleckner was on August 21 and that the communication was not to go.

Nevertheless, plaintiff went to Chicago on Wednesday, August 23, and returned August 24. While there he "met with a Compustat salesperson and made several calls on Compustat business." Appellant's Opening Br. at 12. Plaintiff subsequently informed Smith and Cleckner he had been in Chicago, although Gunter apparently already knew. Cleckner sent plaintiff a voice mail expressing incredulity at plaintiff's decision to make the trip and calling the action "blatant insubordination." Appellant's App. at 210. The message further advised plaintiff that he had disobeyed a direct order of his boss (Smith), the general manager (Cleckner), and human resources (Gunter). Id. Following a meeting on Monday, August 28, prior to which Cleckner, Smith, and Gunter had again discussed the situation with corporate headquarters, plaintiff was terminated for insubordination.

We review the district court's grant of summary judgment de novo, using the same standard as did the district court. See Scull v. New Mexico, 236 F.3d 588, 595 (10th Cir. 2000). Summary judgment is appropriate if the movant

establishes that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Under this standard, "we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996) (further quotation omitted). A fact is material if, under the substantive law, it could affect the outcome of the action, and an issue is genuine if a rational juror could, on the evidence presented, find in favor of the nonmoving party. See Adams v. Am. Guarantee & Liab. Ins. Co., 233 F.3d 1242, 1246 (10th Cir. 2000) (citation omitted).

The district court held as a matter of law that McGraw-Hill's procedures manual contained a clear disclaimer barring claims based on the manual.[1] The third paragraph of the second page of the manual reads as follows:

> This manual is given to you for your information and guidance. It does not represent a contract with employees, and it is not meant to impose any legal obligation upon them or McGraw-Hill. McGraw-Hill may amend or terminate at any time the policies, plans, and benefits described in this manual as our business needs and experience dictate. Any changes will supersede the contents of this manual. Updates to this manual will be issued when necessary to describe any changes in the policies or plans.

Appellant's App. at 213.

---

[1] These claims included the wrongful discharge issues of breach of contract and promissory estoppel.

The district court was correct in its ruling that "[w]hether a contract disclaimer in a handbook is conspicuous is a matter of law." Durtsche v. Am. Colloid Co., 958 F.2d 1007, 1010 (10th Cir. 1992). In addition, "[s]ummary judgment denying claims based on a handbook is appropriate if the employer has clearly and conspicuously disclaimed intent to enter a contract limiting the right to discharge employees." Ferrera v. Nielsen, 799 P.2d 458, 461 (Colo. App. 1990).

The cases relied on by plaintiff for his contract and promissory estoppel claims are inapposite. In Cronk v. Intermountain Rural Electric Ass'n, 765 P.2d 619, 623 (Colo. App. 1988), although the employment manual had a disclaimer, it not only set forth express events which might be cause for termination, but also listed other reasons as grounds for termination "'as long as such legitimate reasons constitute just cause.'" Moreover, the disclaimer itself was added after the plaintiff had commenced employment. [2] See id. In Allabashi v. Lincoln National Sales Corp. of Colorado-Wyoming, 824 P.2d 1, 2-3 (Colo. App. 1991), notwithstanding a handbook disclaimer providing that employees were hired "'for no fixed period of time' and that employment 'may by terminated by the

_____

[2]     We further note that a subsequent unpublished opinion recited that the disclaimer conflicted with the just cause provisions, see Cronk v. Intermountain Rural Elec. Ass'n, No. 90CA0666, 1992 WL 161811, at *2 (Colo. App. Apr. 2, 1992), and that the Cronk disclaimer was "inconspicuously placed in appendix to the handbook." Ferrera, 799 P. 2d at 461.

employee or the Company at will,'" the other documents given to employees contained procedures and policies requiring just cause for termination and providing for specific procedures to be followed in the event of a dismissal.

Finally, in Evenson v. Colorado Farm Bureau Mutual Insurance Co., 879 P.2d 402, 409 (Colo. App. 1993), the court found that a question of fact existed as to whether the company's disciplinary procedures were treated as mandatory and binding, thus supporting plaintiff's claim of breach of an implied employment contract. The court also held that the disclaimer provisions, which stated that the employee handbook was not intended to create or be construed as a contract, were not conspicuous. Id. However, unlike Evenson, in which the court held that "an employer may nevertheless be found to have manifested an intent to be bound by its terms if the manual contains mandatory termination procedures or requires 'just cause' for termination," id., the manual in question here states only that the company's basic policy is to resort to dismissal only where there is reasonable cause. Appellant's App. at 187. Nonetheless, a statement that is merely a description of policy does not constitute a promise or commitment by an employer. See George v. Ute Water Conservancy Dist., 950 P.2d 1195, 1199 (Colo. App. 1997). Thus as noted by the district court, these cases are all factually distinguishable.

Plaintiff's theory of promissory estoppel based on the manual must also fail. To establish such a theory, he must show

> that (1) the employer should reasonably have expected the employee to consider the employee manual as a commitment from the employer to follow policies contained in the manual, (2) the employee reasonably relied on the termination procedures to his detriment, and (3) that injustice can be avoided only by enforcement of the termination procedures.

Vasey v. Martin Marietta Corp., 29 F.3d 1460, 1466 (10th Cir. 1994) (citing Continental Air Lines, Inc. v. Keenan, 731 P.2d 708, 712 (Colo. 1987)).

The manual provisions covering termination provided that McGraw-Hill's basic policy is to dismiss or demote an employee " *only where there is reasonable cause*, as determined in the judgment of management and Human Resources." Appellant's App. at 187 (emphasis in original). This language, however, clearly establishes the right of management to terminate an employee under the circumstances presented here, particularly in view of the express provision in the final warning that any further action as determined by defendant Smith to be detrimental to McGraw-Hill, as determined by defendant Smith, would result in plaintiff's immediate dismissal. Plaintiff has failed to demonstrate that McGraw-Hill should have reasonably expected him to consider the policy as a commitment, that he relied on the manual's statement to his detriment or that injustice can be avoided only by enforcement of the policy. See Bullington v. United Air Lines, Inc., 186 F.3d 1301, 1322 (10th Cir. 1999).

Plaintiff also relies on the "assurances" he claims he received on August 21 that he was suspended pending the resolution of whether he would resign or accept the final warning as a condition of continued employment. He further states that he relied on Gunter's alleged statement--that if he accepted the final warning he would be back on the job--for his decision to travel to Chicago. Assuming for purposes of the summary judgment motion that these statements were made, they do not alter the at-will nature of plaintiff's employment. Plaintiff admitted he knew he needed permission to go to Chicago and that permission had been expressly denied on three different occasions. Nothing in the alleged assurances altered that denial or his ultimate termination for traveling to Chicago in contravention of the final warning.

Also as part of his breach of contract claim, plaintiff claims defendants breached an express covenant of good faith and fair dealing, relying on <u>Decker v. Browning-Ferris Industries of Colorado, Inc.</u>, 931 P.2d 436 (Colo. 1997). In <u>Decker</u>, the Colorado Supreme Court recognized that such a covenant could become a term of an employment agreement. <u>Id.</u> at 443. Insofar as plaintiff alleges that such a covenant is stated in the company's policy manual, we have previously determined that the manual did not create a contractual obligation.

Where "the evidence discloses only a 'vague assurance,' rather than a legally enforceable promise, then the court must determine the issue as a matter

-10-

of law." Soderlun v. Public Serv. Co. of Colo., 944 P.2d 616, 621 (Colo. App. 1997) (quoting Vasey, 29 F.3d at 1465). Moreover, a covenant of good faith and fair dealing does not "inject new substantive terms into a contract or change its existing terms." Id. at 623. "Such a covenant, therefore, cannot limit an employer's right to discharge without cause, unless there is an express or implied promise, independent of the covenant of good faith itself, restricting that right." Id. The oral assurances made by Gunter (that if he accepted the final warning he would be "back on the job") and the deposition testimony of Smith (that he had told those who reported to him it was his policy to treat people fairly) and Cleckner ("we say we want to treat people fairly") are not sufficiently definite as a matter of law to support the breach of contract claims. See Vasey, 29 F.3d at 1465; Dupree v. United Parcel Serv., Inc., 956 F.2d 219, 222-23 (10th Cir. 1992) (statement that "'We Treat our People Fairly and Without Favoritism'" not specific enough to create implied contract; likewise oral assurances too vague to create implied contract); see also Valdez v. Cantor, 994 P.2d 483, 487 (Colo. App. 1999) (questioning whether general statement by employer that employee will be treated fairly would be sufficient to support judicially enforceable obligation); Hoyt v. Target Stores, 981 P.2d 188, 194 (Colo. App. 1998) (trial court erred in denying motion for directed verdict on good faith and

-11-

fair dealing claim where basis was vague assurance of fair and consistent treatment). The district court correctly determined that this claim must fail.

Next, plaintiff contends genuine issues of material fact exist as to his claim against Smith and Cleckner for tortious interference with his contract with McGraw-Hill. We disagree. Under Colorado law

> One who *intentionally* and *improperly* interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

Trimble v. City & County of Denver, 697 P.2d 716, 726 (Colo. 1985) (citations omitted).

As we have earlier stated, plaintiff did not have a contract with McGraw-Hill. "To defeat the presumption of 'at will' employment in Colorado, [a plaintiff] must demonstrate an express stipulation as to the duration of employment in exchange for consideration over and above [his] existing performance." Davies v. Philip Morris, USA, 863 F. Supp. 1430, 1440 (D. Colo. 1994) (further quotation omitted). Because the employment manual did not create a contract, plaintiff remained at all times an at will employee. "In Colorado, employment is generally at-will and an employer may terminate an employee without cause and without notice." Decker v. Browning-Ferris Indus. of Colo., Inc., 947 P.2d 937, 939 (Colo. 1997) (further quotation omitted).

-12-

Moreover, this claim required employer interference with a contractual relationship. There is simply no showing that Smith and Cleckner were motivated solely by a desire to induce McGraw-Hill to breach any contract with plaintiff or to interfere in any contractual relationship between McGraw-Hill and plaintiff. See Meehan v. Amax Oil & Gas, Inc., 796 F. Supp. 461, 465 (D. Colo. 1992). Plaintiff concedes he was told that the basis for his termination was his insubordination. Appellant's Br. at 23. His argument that the termination "was so unreasonable that the only possible motivation was personal malice," see id. at 24, is pure speculation.

Plaintiff's claim for civil conspiracy is also without a legal basis. In order to establish a case of civil conspiracy, Colorado law requires "(1) action of two or more persons; (2) common object to be accomplished; (3) meeting of the minds on the object or course of action; (4) one or more unlawful acts; and (5) damages as a proximate result thereof." White v. Lincoln Plating Co., 955 F. Supp. 98, 101 (D. Colo. 1997) (citing Pittman v. Larson Distrib. Co., 724 P.2d 1379, 1389-90 (Colo. App. 1986)). However, a corporation and its employees do not constitute the requisite two or more persons if the employees are acting "on behalf of the corporation and not as individuals for their individual advantage." Pittman, 724 P.2d at 1390. Plaintiff has failed to establish that Smith and Cleckner acted for their individual advantage as alleged in his amended

complaint. The district court correctly entered summary judgment for defendants on this claim.

Finally, the district court granted summary judgment on plaintiff's claim of outrageous conduct. Plaintiff has failed to demonstrate any facts showing that defendants' conduct was outrageous. To be liable for the intentional infliction of emotional distress (outrageous conduct under Colorado common law), defendants' conduct "must be more than unreasonable, unkind or unfair; it must truly offend community notions of acceptable conduct." Grandchamp v. United Air Lines, Inc., 854 F.2d 381, 383 (10th Cir. 1988). There is simply no evidence that the actions taken by defendants rose to the level of "'atrocious and utterly intolerable' conduct required for an outrageous conduct claim." Wilcott v. Matlack, Inc., 64 F.3d 1458, 1465 (10th Cir. 1995) (quoting Rugg v. McCarty, 476 P.2d 753, 756 (Colo. 1970)).

AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge